[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On or about March 31, 1986, the petitioner was sentenced to a term of eighteen years for the crime of manslaughter in the first degree. He began serving his sentence at the Connecticut Correctional Institution, Somers, (hereinafter CCI-Somers) on that date. On October 29, 1986, the petitioner was transferred to a correctional facility in New Hampshire and remained there until April 3, 1987, when he was returned to Somers. On June 8, 1987, the petitioner was again transferred, on this occasion to a prison in Massachusetts, until December 11, 1987, when he was returned to Somers. He has been in custody in Connecticut since that date.
On January 8, 1988, an original petition for a writ of habeas corpus was filed. Several other documents were filed by the petitioner, who appeared pro se. On November 18, 1988, the court ordered, for purposes of trial, that the petitioner's claims be restricted to the three claims listed on page two of the petitioner's "supplemental" document dated February 25, 1988. First, the petitioner claims that he is presently incarcerated pursuant to a mittimus which is facially invalid. Second, he claims that he was involuntarily and improperly transferred to a prison in New Hampshire in October of 1986. Third, he claims that a conflict of interest prevents the Attorney General of Connecticut from representing the warden in this matter.
The court recognizes at the outset, that Sec. 52-466a C.G.S. provides that an application for a writ of habeas corpus shall be presented to the Superior Court by a person who claims to be either illegally detained in a correctional facility or deprived of his liberty therein. A writ of habeas corpus may therefore be directed at CT Page 192 the judgment which led to the detention or at the nature of the detention itself. Ciarmelia v. Brownell, 35 Conn. Sup. 117, 118
(1978). If the writ is directed at the nature of the detention, as it is in this matter, the court should concern itself only with those rights founded in the constitution or otherwise thought to be of substantial character. Ciarmelia, id. It is only situations involving rights of this magnitude that can raise doubts as to the legality of confinement. Dukuly v. Warden, 34 Conn. Sup. 88, 93 (1977). "If the quality and properties of the detention are such that a petitioner is deprived of constitutional rights in addition to those rights of which his sentence may constitutionally deprive him, this may raise doubt as to the legality of the confinement." (Emphasis added.) Dukuly, id.
In reaching its conclusions of law regarding the petitioner's claims, the court made the following findings of fact based upon testimony heard and documents admitted into evidence on March 28, 29, April 6 and May 17, 1990.
The petitioner was sentenced to a term of incarceration of eighteen years on March 31, 1986, for the crime of manslaughter in the first degree. A mittimus was prepared and signed by the court clerk, Joy Toussant. A mittimus is the warrant by virtue of which a convicted person is transported to and rightly held in prison. Alexander v. Robinson, 185 Conn. 540, 546 (1981). The court clerk has a duty to prepare and sign the mittimus as a representative of the court. Reed v. Reincke, 158 Conn. 45, 47 (1969).
The requirements of a valid mittimus are clearly set forth in C.G.S. Sec. 54-97 as follows:
 Sec. 54-97. Mittimus required. Exception. No person may be committed to the Connecticut Correctional Institution, Somers, or a community correctional center without a mittimus signed by the judge or clerk of the court which committed him, declaring the cause of commitment and requiring the warden or community correctional center administrator to receive and keep him in the Correctional Institution, Somers, or the community correctional center, as the case may be, for the period fixed by the judgment of said court or until he is legally discharged; and such mittimus shall be sufficient authority to the officer to commit such person, and to the warden or community correctional center administrator to receive and hold him in custody, except that any community correctional center may receive any person as provided in section 7-135
without such mittimus.
An examination of the mittimus introduced in evidence at the trial reveals the statutory requirements were met. Although the CT Page 193 petitioner claimed in his petition and at trial that the mittimus was facially invalid, he introduced no evidence to support his claim. The petitioner called as a witness the then court clerk, Ms. Toussant, who testified that she signed the mittimus on March 31, 1986. Kay Bryan, the records clerk at Somers for nearly twenty-five years, testified that the institution would not accept a prisoner if the mittimus was defective in any way. Subsequent testimony established that prior to filing this petition, the petitioner had obtained a copy of the mittimus from the court's file in Hartford. It was unsigned and the petitioner apparently concluded that the original mittimus, which accompanied the prisoner to Somers on March 31, 1986, was also unsigned. The first claim of the petitioner, that he was incarcerated pursuant to a mittimus that is facially or patently invalid, is without merit.
On October 26, 1986, a fight broke out at Somers between Hispanic and Muslim inmates. The former warden, George Bronson, and former deputy warden, Frank Crose, testified that a state of emergency was declared and that pursuant to administrative direction, existing regulations and policies were suspended. Two days later the petitioner, who had not taken part in the original incident but is a Muslim, was assaulted. In an effort to stop the violence, both prison officials testified that the petitioner was transferred to a prison facility in New Hampshire for his own safety and for the safety of others within the prison's population. Both agreed he was transferred without a hearing, and this fact is the basis of the petitioner's second claim.
The petitioner claims that he was improperly transferred from CCI Somers to a New Hampshire prison because he was not granted a hearing prior to his transfer.
There were Department of Correction administrative directives in existence in 1986 setting forth policies regarding the transfer of inmates within Connecticut and out-of-state. In some instances inmates are given hearings and in other instances notification of transfer is given to next of kin, all pursuant to these directives. Notwithstanding these directives which, as previously mentioned, could be suspended during a state of emergency, the Department of Correction has authority to transfer to another state by virtue of statutes. See C.G.S. Secs. 18-102, et seq. and Secs. 18-105, et seq. A prison inmate's transfer to a correctional facility in another state does not deprive an inmate of any interest protected by the due process clause. Olin v. Wakinekova, 416 U.S. 238, 249 (1983). This petitioner's temporary transfer to a prison facility within the State of New Hampshire and later to a facility in the Commonwealth of Massachusetts is within the discretion of the Commissioner of the Department of Correction. C.G.S. Secs. 18-102, et seq.
In view of the fact that the petitioner's transfers did not CT Page 194 implicate a liberty interest, the petitioner was not entitled to the due process protections such as are contemplated by Dukuly, supra. The petitioner was therefore not entitled to a hearing prior to his transfers and this claim is without merit.
The petitioner's third claim alleges a conflict of interest exists between the office of Attorney General and the warden in the defense of this petitioner's application. He says the Attorney General should not represent a warden who is guilty of kidnapping the petitioner.
Briefly, the Attorney General has general supervision over all legal matters in which the State is an interested party, except those legal matters for which prosecuting officers have direction. C.G.S. Sec. 3-125. The Attorney General is also involved in matters in which the official acts and doings of state officers are called into question. Id.
Prior discussion herein of the validity of the petitioner's mittimus and subsequent transfers demonstrates that the petitioner was legally and properly confined while in custody at CCI-Somers and while in the temporary custody of New Hampshire and Massachusetts officials. His removal across state lines does not amount to a kidnapping. The warden has committed no unlawful act that would make representation of him by the Attorney General improper. This final claim is without merit as are the others.
The petition is dismissed.
POTTER, J.