GERALD E. DUKULY *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208649

ARTHUR PAQUIN *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208650

DAVID A. PAGANO *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208651

ETHIELL D. MCCLAIN *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208689

CLIFFORD A. WILLIAMS *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208690

ABRAHAM L. LEE *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208746

CALVIN AREY *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208747

FRED MERRILL *v.* WARDEN

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 208748

Memorandum filed March 17, 1977

*Charles D. Gill,* office of the chief public defender, for the plaintiffs.

*Carl R. Ajello,* attorney general, and *Stephen J. O'Neill,* assistant attorney general, for the defendant.

RUBINOW, J. The eight plaintiffs named above have each filed an individual petition for the writ of habeas corpus and the defendant has demurred to the prayer for relief contained in each petition.[1] The same legal issue is raised in each of the defendant's demurrers, and the following memorandum of decision applies equally to the demurrers to each of the eight above-named individual petitions.

In this petition for a writ of habeas corpus (hereinafter, the subject petition), the plaintiffs challenge the conditions of their confinement in administrative segregation at the Connecticut correctional institution at Somers. They allege, inter alia,

---

[1] There are two prayers for relief, one specific and one general. Nevertheless, to reach the basic issue briefed by the parties, the court has considered only the specific prayer, i.e., that a plan be formulated to end the allegedly unconstitutional acts. Because only one prayer has been considered, the singular has been used in this opinion in referring to the relief prayed for.

that those conditions constitute cruel and unusual punishment and deny them the right to practice their religious beliefs. In the prayer for relief, they ask that the court direct the defendant to prepare an administrative plan to remedy those conditions and to submit the plan to the court for review.

The defendant has demurred to the prayer for relief on the ground that the relief requested may not be granted in a petition for a writ of habeas corpus, and that such relief more properly belongs in an action of mandamus or in an action for an injunction. The defendant claims that since there is no prayer that the plaintiffs be released from detention, but only a prayer for an order designed to remedy the conditions of their confinement, the prayer for that relief may not be included in the subject petition. The demurrer to the prayer for relief thus raises a fundamental question concerning the scope of the relief that may be granted in a petition for a writ of habeas corpus in Connecticut.

## I

In recent months, the scope of the petition for a writ of habeas corpus in Connecticut has been probed in a series of petitions brought by the inmates of the Connecticut correctional institution at Somers. Petitions have been brought seeking to enjoin alleged violations of various constitutional and human rights by prison authorities. Those petitions illustrate the necessity to accommodate the rule that an extremely broad scope of discretion and responsibilities must be accorded to the commissioner of correction under § 18-81 of the General Statutes; *Jones* v. *Manson,* 393 F. Sup. 1016, 1023 (D. Conn.); with the rule that a prisoner does not shed his basic constitutional rights at the prison gate. *Wolff* v. *McDonnell,* 418 U.S. 539, 579. A corollary of the latter rule is the rule that prisoners

must be afforded the means to redress violations of constitutionally protected freedoms. Ibid; see *Young* v. *Ragen,* 337 U.S. 235, 239.

## II

The history of the writ of habeas corpus is discussed at length in *Fay* v. *Noia,* 372 U.S. 391. The court there notes (pp. 401–402) that, in the contest between personal liberty and government oppression, the function of the writ of habeas corpus has been "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints," and then refutes the assertion that, at common law, the writ was available only to inquire into the narrow question of the jurisdiction of the committing court. The court finds, instead, authority (p. 405) for the proposition "that habeas was available to remedy any kind of governmental restraint contrary to fundamental law."

Although the initial use of the writ throughout the United States was generally limited to an attack on the jurisdiction of the court ordering the detention, the writ has evolved as a remedy to effect a discharge from "any confinement contrary to the Constitution . . . even though imposed pursuant to conviction by a court of competent jurisdiction." *Preiser* v. *Rodriguez,* 411 U.S. 475, 485. The most important result of the evolution of the writ has been to afford a swift and imperative remedy in all cases of illegal restraint. As observed by Mr. Justice Murphy in *Price* v. *Johnston,* 334 U.S. 266, 269, "[i]t has been the judicial method of lifting undue restraints upon personal liberty." It is against this historical background that the present scope of the writ in Connecticut will be considered.

## III

The statutory requirements for, and scope of, the Connecticut writ of habeas corpus are found in

§ 52-466 of the General Statutes, which provides that an application may be made to the Superior Court by a person who claims to be "illegally confined or deprived of his liberty." In *Flaherty* v. *Warden,* 155 Conn. 36, 39, the court discussed the function of the writ and held that the writ is available only to determine the "legality of . . . detention." This case has frequently been cited in demurrers addressed to petitions for the writ when the petition made allegations other than that the detention was based on an invalid judgment. The decision in *Flaherty,* however, does not mandate the narrow scope of relief frequently attributed to the decision.

In *Flaherty,* a writ of habeas corpus was sought on behalf of Anthony J. Saia by his attorney, who alleged an unlawful denial of Saia's right to private consultation with his counsel. The court concluded that the prison regulation under attack did not concern the legality of Saia's detention, and that, therefore, the validity of the regulation could not properly be reviewed in an action seeking a writ of habeas corpus. The court (p. 39) recognized, however, the availability of the writ to a person restrained of his liberty who desires a hearing to determine the "legality of his detention." Since the petition for the writ must allege facts supporting a claim of illegal confinement, in *Flaherty* the writ had to be dismissed, there being no claim of an illegal detention. The case thus stands for the proposition that writs of habeas corpus are to be dismissed when they attack aspects of prison procedure that do not constitute a challenge to the legality of the confinement. On the other hand, *Flaherty* does not mean that challenges to the legality of the confinement, other than those directed to the legality of the judgment, may not come within the purview of a petition for a writ of habeas corpus.

## IV

Under given circumstances, a claim of illegality of confinement may relate directly to the nature of the detention rather than to the nature of the judgment. Every judgment to a prison term involves a curtailment of personal freedom, and every judgment explicitly addresses the nature, extent and duration of that curtailment. If the quality and properties of the detention are such that a prisoner is deprived of constitutional rights, in addition to those rights of which his sentence may constitutionally deprive him, this may raise doubts as to the legality of the confinement. That view was well expressed in *Coffin* v. *Reichard,* 143 F.2d 443, 445 (6th Cir.), where the court held that "conviction and incarceration deprive . . . [a petitioner] only of such liberties as the law has ordained he shall suffer for his transgressions." If the nonjudgmental aspects of restraint lead to restraint that has unconstitutional qualities and properties, a question is raised as to the legality of the detention. Even under *Flaherty,* illegality of detention arising from that kind of unconstitutional restraint may be claimed properly in a petition for writ of habeas corpus.

## V

Given the rule that incarcerated persons must have an access to a post-conviction proceeding that permits them to make a claim of nonjudgmental illegality of confinement, there is a persuasive practical consideration for holding that the writ is available in cases such as that brought by the subject petition. The only practical procedure now provided in this state for access to the courts for the assertion of constitutional claims by inmates is that of a petition for a writ of habeas corpus. Habeas corpus is the only procedure that does not impose the handicap of court costs and counsel fees. It is

the only procedure that can be initiated by merely marking a box in a form provided by the department of correction.[2]

To adopt the defendant's view, that habeas corpus is a remedy only when the inmate is challenging the legality of the judgment of conviction, would effectively deny a hearing on claims of inmates that, since their convictions, they have been illegally detained because of acts not related to the original judgment. The court should not adopt a rule that will have that practical consequence.

The demurrer to the prayer for relief is overruled.[3]

[2] This argument is made by the plaintiffs in their brief and appears warranted under existing practice.

[3] The defendant's claim that the rules applicable to mandamus should be applied to this case cannot be sustained. The subject petition is not a mandamus action, even though the defendant is a state officer.