## ANDRES SANCHEZ ET AL. *v.* WARDEN, STATE PRISON (13820)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

Argued December 12, 1989—decision released February 20, 1990

*Richard T. Biggar,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellant-appellee (respondent).

*David L. Kent,* for the appellees and appellee-appellant (petitioners and petitioner Joseph Wilson).

SHEA, J. The principal issue in this appeal is whether the first amendment to the United States constitution[1] was violated when the respondent, the warden of the Connecticut Correctional Institution at Somers, denied the petitioners[2] access to radios with sound emitting speakers, despite having allowed them to possess radios that could be listened to by means of headphones.[3] We hold that the first amendment was not implicated by the respondent's policy and conclude, therefore, that the trial court erred when it ordered the respondent to make regular radios available to all prisoners at Somers.

---

[1] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . . " The protections afforded by this constitutional provision are applicable to state action by virtue of the due process clause of the fourteenth amendment to the United States constitution. See *Near* v. *Minnesota,* 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357 (1931) (press); *Fiske* v. *Kansas,* 274 U.S. 380, 47 S. Ct. 655, 71 L. Ed. 1108 (1927) (speech).

[2] Parties to this appeal include the named petitioner and petitioners Steven J. Wood, Gary L. Hansen, Samuel J. Veal, Ronald Walker and Joseph Wilson.

[3] For the sake of clarity and consistency within this opinion, the following terms will be utilized: (1) "regular radio" will refer to any radio capable of transmitting sound to more than one listener by means of an internal sound emitting speaker; (2) "headphone radio" will refer to any radio that can be listened to by only one person, by means of headphones worn by that person; (3) "boom box radio" will refer to any radio, generally more than twelve inches in length, capable of transmitting sound to more than one person by means of separate dual speakers; and (4) "recording device" will refer to any electronic device, generally contained within a radio unit, capable of making cassette tape recordings of either radio broadcasts or conversations in the surrounding environment.

These actions, consolidated for trial before the Superior Court, *Axelrod, J.,* had as their origin a habeas corpus action brought by petitioner Wilson in 1986, seeking, inter alia, the return of an "AM/FM Radio" and color television set that had been confiscated by the respondent. After a trial held on August 8, 1986, the court, *O'Neill, J.,* ordered that the "radio/stereo/recorder" be returned to Wilson and that "Mr. Wilson's family or friends [could] collect the television set that was taken."

In the wake of this order, petitioners Wood, Hansen, Veal, Walker and Sanchez each filed, on various dates during the period from September, 1986, through February, 1987, a petition for a writ of habeas corpus, alleging that the respondent had denied them access to radios essentially similar to the radio that had been returned to Wilson. The respondent meanwhile, on September 25, 1986, moved to set aside Judge O'Neill's order returning Wilson's radio. In an affidavit supporting the motion, counsel for the respondent asserted that it had "come to respondent's attention . . . that the radio in question ha[d] a recording capacity." The respondent claimed that the judgment should be set aside since the issue of a recording device had not been considered at the trial before Judge O'Neill and that "[s]uch a recording capacity [could] well threaten the security of [the] petitioner and other inmates at CCI, Somers." After considering an objection filed by Wilson, the trial court, *Ripley, J.,* set aside the prior judgment "insofar as it pertains to disposition of the recording device."

In response to the petitioner Wilson's motion for a full hearing, motion to show cause, motion for judgment and application for a writ of mandamus, the trial court, *Mack, J.,* held a hearing on March 6, 1987. Wilson stated at this hearing that the purpose of his motions was to "set the verdict [of Judge O'Neill] back

in its place." Wilson charged that counsel for the respondent had filed the supporting affidavit in bad faith, since Judge O'Neill had, as evidenced by the transcript of the prior trial, been aware of the recording device. On March 16, 1987, Judge Mack denied Wilson's various motions and ordered that a new trial be conducted on the issue of the recording device.

The respondent, on May 9, 1988, moved to quash each of the pending petitions, alleging that they raised issues "which [were] not cognizable in habeas corpus." Each motion was denied by the trial court, *Axelrod, J.,* on May 11, 1988. The respondent then filed a return in each case, asserting that each petitioner was "not allowed to possess a 'boom-box' type radio/recorder at CCI, Somers because the possession of such radios is a threat to the security of inmates, staff and visitors . . . ." The trial court then granted, also on May 11, the respondent's motion to consolidate all of the pending cases. The trial took place over the course of two days, May 11 and May 13, 1988. On the latter date, the trial court canvassed the petitioners and allowed an amendment to each of the petitions "to include a First Amendment violation as part of the claims."

In its memorandum of decision, the trial court concluded that "access to a radio is a protected First Amendment right," and, on the basis of *Turner* v. *Safley,* 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), *Procunier* v. *Martinez,* 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), and *Gaines* v. *Manson,* 194 Conn. 510, 481 A.2d 1084 (1984), granted the petitions and ordered that the respondent "forthwith make available for sale at the CCI, Somers commissary regular sound emitting radios that do not require the use of earplugs to be heard." The respondent has appealed from this judgment claiming that the trial court erred in: (1) concluding that the petitioners had a first amendment right to possess radios with external speakers;

and (2) hearing the habeas corpus petitions, since they involved no issue affecting the constitutionality of the petitioners' confinement. The petitioner Joseph Wilson has filed a cross appeal in which he claims that the trial court erred in setting aside the prior judgment rendered in his favor. Further facts pertinent to these issues will be set forth in the opinion that follows. We find error on the appeal and no error on the cross appeal.

## I

In his principal claim of error, the respondent asserts that: (1) the trial court erred in concluding that there was any constitutional difference between regular radios and headphone radios; and (2) even if there were such a difference, the right to possess a regular radio was denied in this case on the basis of a valid penological security interest. We agree with the first of the respondent's assertions and, therefore, need not address the merits of the second.

The trial court found the following relevant facts. Wilson sought the return of his boom box radio, which included a recording device. Petitioner Sanchez sought to possess a radio similar to Wilson's, with a recording device. Sanchez claimed that the headphone radio made available to him through the prison commissary "hurt his ears." Petitioner Walker also claimed that a headphone radio hurt his ears, and sought possession of a regular radio with a recording device, albeit one capable of recording radio broadcasts only, rather than live conversations. Petitioner Veal claimed that use of a headphone radio could prevent him from hearing an "emergency freeze order" while in the open yard at the prison. Veal sought the right to purchase a regular radio, similar to those that previously had been sold in the prison commissary. Petitioner Hansen sought the return of a radio he had purchased at the Whiting Forensic Institute prior to his transfer to Somers. The

radio did not include a recording device, as it had been removed prior to Hansen taking possession of the radio. Petitioner Wood sought the return of a radio he had possessed when he arrived at Somers. The radio had dual speakers and a recording device. Wood was informed by prison officials that he could not retain the radio due to its size, the number of speakers and the recording device.

The trial court also found that "[t]he Somers prison radio regulation in issue prohibits all inmates from obtaining a [regular radio] after arriving at Somers, while allowing all inmates who had [regular] radios in Somers prior to this regulation being adopted to retain such radios,[4] and allowing all inmates who arrive at Somers, with a [regular] radio obtained from a community correctional center that sells such radios to retain such radios."[5] Further, inmates could transfer their regular radios to other inmates upon leaving the institution and could have regular radios repaired at the prison. The only reason advanced by the respondent for this apparent disparity in the type of radios that could be possessed by inmates was a desire "not to impose on such inmates [possessing regular radios] the cost of purchasing a second radio after arriving at Somers."

---

[4] The trial court determined that regular radios had been sold in the Somers commissary "from at least as far back as 1970, [until] December of 1982 or 1983," when the present policy was instituted allowing only the purchase of headphone radios.

[5] The trial court found that of the various correctional institutions that transferred prisoners to Somers: (1) the Montville facility did not sell radios at its commissary; (2) the Litchfield, Hartford and Bridgeport facilities sold only headphone radios at their commissaries; (3) the Cheshire, New Haven and Carl Robinson facilities sold both headphone and regular radios at their commissaries; and (4) the Manson Youth Institute and the J. B. Gates facility sold only regular radios at their commissaries. None of the facilities transferring prisoners to Somers sold either boom box radios or radios containing recording devices.

The trial court determined initially that "access to a radio is a protected First Amendment right" and, further, that "radio networks and broadcasters are protected by the First Amendment." On the basis of the facts set forth above, the trial court then concluded that the respondent's radio policy interfered with the petitioners' access to regular radios and also placed "incidental and consequential restrictions" on the receipt of the broadcasters' transmissions. Having found restrictions upon constitutionally protected rights of free speech, the trial court concluded: (1) that the regulation, as it related to the petitioners, was constitutionally invalid under the "reasonably related to legitimate penological interests" standard of review announced by the United States Supreme Court in *Turner* v. *Safley,* supra, 89; and (2) that the regulation, as it related to broadcasters, was invalid under *either* the "least restrictive alternative" standard of review set forth in *Procunier* v. *Martinez,* supra, 413–14, or the "reasonably related" standard of *Turner.*[6] The trial court did conclude, however, that the petitioners' claims regarding boom box radios and recording devices did not raise constitutional issues.[7] The court

---

[6] Since a discussion of these differing standards of review is unnecessary to our resolution of this issue, we will not engage in a detailed analysis of either. We do note that the trial court, in its memorandum of decision, determined that "[a] prison regulation impinging on First Amendment rights, in order to withstand a constitutional challenge, must be reasonably related to legitimate penological interests to the extent it restricts prisoners' rights; [*Turner* v. *Safley,* 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 224 (1974);] and in addition must meet the least intrusive means available test of [*Procunier* v. *Martinez,* 416 U.S. 396, 413–14, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974),] to the extent the regulation restricts rights of nonprisoners." The United States Supreme Court has, however, overruled *Martinez* to the extent that it suggests a constitutional distinction between mail sent to prisoners by nonprisoners rather than other prisoners. *Thornburgh* v. *Abbot,* 490 U.S.    , 109 S. Ct. 1874, 1881, 104 L. Ed. 2d 459 (1989).

[7] This portion of the trial court's decision has not been challenged by any of the petitioners.

ordered, therefore, only that the respondent make regular radios available to all inmates at Somers.

We have no occasion either to agree or to disagree with the thoughtful and thorough review undertaken by the trial court, since we conclude that on this record the petitioners have failed to meet their burden of establishing an imposition on their constitutionally protected right to free speech. See *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 75, 523 A.2d 486 (1987). Assuming, for the purpose of this appeal, that the trial court correctly determined that a prison inmate is constitutionally entitled to access to a radio and that broadcasters are constitutionally entitled to have their transmissions heard by prison inmates, we conclude that the respondent's radio policy, as applied in this case, simply does not implicate the free speech protections contained in the first amendment to the United States constitution.

*Procunier* v. *Martinez,* supra, and *Turner* v. *Safley,* supra, both dealt, in relevant part, with prison restrictions placed upon the sending and receipt of mail by inmates. In each case, however, the question before the court was not whether censorship by prison officials infringed upon rights protected by the first amendment, a point that was undisputed. The court in those cases was instead formulating "a standard of review for prisoners' constitutional claims that [was] responsive both to the 'policy of judicial restraint regarding prisoner complaints and [to] the need to protect constitutional rights.' " *Turner* v. *Safley,* supra, 85, quoting *Procunier* v. *Martinez,* supra, 406. Here, by contrast, the respondent claims that there is no first amendment distinction between regular radios and headphone radios, and, therefore, no first amendment issue is involved. We agree.

As the Supreme Court of the United States has recently stated, "we have not traditionally subjected every criminal and civil sanction imposed through legal process to 'least restrictive means' scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction. Rather, we have subjected such restrictions to scrutiny only where it was conduct with a significant expressive element that drew the legal remedy in the first place, as in [*United States* v. *O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) (burning draft card)], or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity, as in *Minneapolis Star* [*& Tribune Co.* v. *Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S. Ct. 1365, 75 L. Ed. 2d 295 (1983) (tax imposed on newsprint and ink)]." *Arcara* v. *Cloud Books, Inc.,* 478 U.S. 697, 706–707, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986). The court concluded, consequently, that "the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen[ed] to sell books." Id., 707. The court reasoned that "First Amendment values may not be invoked by merely linking the words 'sex' and 'books.'" Id., 705.

In the case before us, the trial court invoked first amendment values by merely linking the words "radio" and "restrictions," without first determining whether the petitioners' access to radio transmissions was truly restricted. While we cannot agree, given the differing standards for possession of radios at Somers, with the respondent's claim that the petitioners were asserting "petty gripes about a prison policy that in no way involve[d] any constitutional issue," we do conclude that the evidence presented to the trial court did not establish a constitutionally impermissible restriction on the

petitioners' access to radio broadcasts. There was no evidence presented that headphone radios did not operate as well as regular radios, nor was there any assertion that the restriction upon headphone radios was a pretextual means of lessening the amount of radio listening engaged in within the prison. See id., 708 (O'Connor, J., concurring).[8] The only evidence presented to the trial court that would arguably begin to support the type of restriction necessary to trigger first amendment analysis was the testimony of petitioners Sanchez and Walker that the headphone radios hurt their ears, and petitioner Veal's testimony that the headphone radio could have prevented him from hearing emergency freeze orders in the prison yard. We hold that such minor problems, which can be alleviated by other measures, do not constitute restrictions upon access to radio broadcasts sufficiently insidious to implicate first amendment analysis.[9] We conclude, therefore, that the trial court erred in finding such a restriction and, consequently, in determining that the first amendment was implicated by the respondent's policy concerning radio possession.

## II

Although the conclusion we have reached in Part I adequately resolves the merits of the appeal, the respondent has also raised the issue of whether the remedy of habeas corpus should be made available for

---

[8] Justice O'Connor opined: "If . . . a city were to use a nuisance statute as a pretext for closing down a bookstore because it sold indecent books or because of the perceived secondary effects of having a purveyor of such books in the neighborhood, the case would clearly implicate First Amendment concerns and require analysis under the appropriate First Amendment standard of review." *Arcara* v. *Cloud Books, Inc.,* 478 U.S. 697, 708, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986) (O'Connor, J., concurring).

[9] We also hold that, if radio broadcasters possess a first amendment right to have their transmissions received by prison inmates, that right is not affected by the transmission being heard by the listener through headphones rather than speakers.

prisoners to attack the conditions of their confinement rather than its legality. The respondent filed motions to quash raising this issue in the trial court, which were denied.

In *Flaherty* v. *Warden,* 155 Conn. 36, 40, 229 A.2d 362 (1967), in which the petitioner by way of habeas corpus challenged a prison regulation denying the use of a conference room for the purpose of consultations between prisoners and their attorneys, this court declared that "[q]uestions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus." The Superior Court, in *Dukuly* v. *Warden,* 34 Conn. Sup. 88, 377 A.2d 1344 (1977), a habeas corpus action in which the petitioners claimed that the conditions of confinement in administrative segregation at the state prison in Somers constituted cruel and unusual punishment and prevented them from practicing their religious beliefs, took a broader view of the scope of the writ, concluding that it was available to remedy " 'any kind of governmental restraint contrary to fundamental law.' " Id., 91, quoting *Fay* v. *Noia,* 372 U.S. 391, 405, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963). "If the nonjudgmental aspects of restraint lead to restraint that has unconstitutional qualities and properties, a question is raised as to the legality of the detention." *Dukuly* v. *Warden,* supra, 93. Other judges of the Superior Court have followed the view expressed in *Dukuly* that a petition for a writ of habeas corpus is not restricted to a challenge of the validity of the judgment under which a prisoner is incarcerated. *Ciaramelia* v. *Brownell,* 35 Conn. Sup. 117, 399 A.2d 843 (1978). "Necessarily, however, the only rights with which the court is concerned are those founded in the constitution or thought to be of a substantial character." Id., 118.

A significant factor underlying the decision in *Dukuly* was the assumption that habeas corpus was the only

practical method available to a prisoner for bringing to the attention of a court serious violations of his constitutional rights arising from his confinement. The opinion did not consider the Civil Rights Act of 1871; see 42 U.S.C. §§ 1983 and 1988;[10] which provides such remedies as damages, both compensatory and punitive, injunctive relief and attorney's fees. Such an action may be brought in either a federal or a state court. *Fetterman* v. *University of Connecticut*, 192 Conn. 539, 549, 473 A.2d 1176 (1984). It is not self-evident that the standard relief granted in a habeas corpus action, discharge of the prisoner unless the violation of his rights is corrected, is necessarily more efficacious than the relief available to a successful § 1983 plaintiff.

Because the respondent has not, either on appeal or in the trial court, raised the possible availability of § 1983 as an alternative that the petitioners in this case could have pursued, it would be inappropriate for us at this time to resolve the issue of whether a § 1983 action rather than a petition for a writ of habeas corpus should have been the procedural vehicle utilized. Neither party has briefed the question. Accordingly, we await a more suitable occasion to decide whether the scope of habeas corpus should be broadened to include challenges to conditions of confinement when § 1983 may be a viable alternative for presenting the peti-

---

[10] Title 42 of the United States Code, § 1983 provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Title 42 of the United States Code, § 1988 provides in part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

tioner's claims. We need not consider denial of the respondent's motions to quash, which does not raise a jurisdictional issue; *Pi* v. *Delta,* 175 Conn. 527, 400 A.2d 709 (1978); because our resolution of the appeal on its merits is a sufficient disposition and one that terminates this protracted litigation.

## III

In his cross appeal, petitioner Wilson claims that the trial court erred in setting aside the judgment rendered by Judge O'Neill, which ordered the respondent to return to Wilson a radio that also contained a recording device. Acknowledging that the respondent's motion to set aside the judgment was timely filed; see Practice Book § 326 and General Statutes § 52-212a;[11] and that such a motion is addressed to the sound discretion of the trial court; *Acheson* v. *White,* 195 Conn. 211, 214–15, 214 A.2d 197 (1985); Wilson argues that the trial court, *Ripley, J.,* abused its discretion in setting aside the prior judgment since both the respondent and Judge O'Neill were aware of and should have considered, at the prior trial, the fact that Wilson's radio contained a recording device. From our review of the record and the transcripts of the trial before Judge O'Neill and of the hearing before Judge Mack, we conclude that Judge Ripley did not abuse his discretion in setting aside the judgment rendered by Judge O'Neill.

---

[11] Practice Book § 326 provides in part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court."

General Statutes § 52-212a is nearly identical in language to Practice Book § 326.

At the trial conducted before Judge O'Neill the primary issue was the actual ownership of a television set and radio that previously had been confiscated from Wilson's cell. The respondent, at that trial, presented testimony from John Romanovicz, the property and claims officer at Somers. Romanovicz testified that he had checked Wilson's property card and had determined that the television set that had been confiscated was not properly recorded as the property of Wilson. Conversely, the same check of Wilson's property card indicated that the radio was properly recorded and had been "okayed" for his possession. On this basis, Romanovicz indicated that the institution would probably be willing to give the radio back to Wilson. The trial court's order adopted this recommendation.

The respondent's motion to set aside this judgment contained an affidavit, subscribed and sworn to by his counsel, which asserted that it had come to counsel's attention that the radio included a recording device and that such a device "may well threaten the security of petitioner and other inmates at CCI, Somers." Wilson claims that, because the radio had been in the possession of the respondent for some five months prior to the trial before Judge O'Neill and because Judge O'Neill specifically referred to the radio as a "radio/stereo/recorder," it was an abuse of discretion to set aside the prior judgment based upon counsel's assertion that the recording capability of Wilson's radio had come to the respondent's attention only after the conclusion of the trial before Judge O'Neill. While it may be true that the respondent either knew or should have known, at the time of the first trial, that Wilson's radio contained a recording device, it was the *significance* of this recording device in relation to the prison policy prohibiting such devices, which was not brought to light before Judge O'Neill, that led to setting aside the earlier judgment.

At the hearing before Judge Mack, on March 6, 1987, Wilson was heard concerning his various motions seeking to keep the prior judgment intact. Counsel for the respondent then informed the trial court: "Judge O'Neill ordered the boom box returned to Mr. Wilson based on the testimony of one of our correctional officials, who happened to be the property officer, that there was no reason why this stereo couldn't be returned to Mr. Wilson. After that trial it came to my attention that the correctional official was incorrect, that there was a problem with this boom box and the problem was, from the Warden's point of view, simply that the boom box contained a recording device. . . . The Warden's position is that a recording device in this institution is a danger to the security of the inmates and the institution itself, all the people in it, and cannot be possessed by any inmate, not just Mr. Wilson." Wilson has conceded that the respondent's policy concerning possession of recording devices had not been brought to the attention of Judge O'Neill at the first trial. In light of this concession and the argument made by the respondent before Judge Mack, we conclude that there was no abuse of discretion in setting aside the judgment rendered by Judge O'Neill and ordering that a new trial take place.

There is error on the respondent's appeal, the judgment is set aside and the case is remanded with direction to render judgment for the respondent; there is no error on petitioner Wilson's cross appeal.

In this opinion the other justices concurred.