[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This petition for a writ of habeas corpus comes before the court upon motions to dismiss and quash in which the respondent objects that the relief sought in the petition is beyond the scope of habeas relief.
The petitioners/plaintiffs, Howard Allen, John Dix and Melvin Lee Daniels, have filed an amended petition in which they seek both a writ of habeas corpus and a writ of mandamus as remedies for their claim that the respondent Commissioner of Corrections has violated their right to practice their religion by various prison procedures claimed to impede their ability to fulfill Muslim observances during their incarceration.
The respondent has moved to quash the portion of the petition which seeks a writ of habeas corpus. It has moved to dismiss the mandamus action on the ground of lack of subject matter jurisdiction.
I MOTION TO QUASH PETITION FOR HABEAS CORPUS
The gravamen of the petitioners' claim is that the respondent Commissioner of Corrections is violating their First Amendment right to practice their religion by failing to provide meals including the meat of ritually slaughtered animals, by offering meals to observant Muslims that are smaller and less nutritious than those provided to others, by preventing them from obtaining oils and fragrances, "toothsticks," a compass, watches and prayer rugs to be used in observance of religious ceremonies and customs; by not furnishing an opportunity for ritual bathing before prayer services; and by refusing to allow a person to walk through the prison to announce the Sabbath Service. CT Page 2311
The petitioners make the further claim, unrelated to their First Amendment claim, that they are allowed to have only two sets of underwear, rather than the five sets claimed to be authorized under a prison "property matrix."
The only relief sought by the petitioners is 1) an order bringing them before the court to state their claim and 2) a mandamus ordering changes in living conditions.
The respondent objects that all of the above issues are concerned with conditions of confinement, and that none concerns the legality of incarceration of any of the petitioners nor furnishes a ground for release from custody.
The scope of habeas corpus relief is defined in 52-466 and52-470 C.G.S. The former statute states at subsection (b) that an application for habeas corpus "shall be verified by the affidavit of the applicant for the writ alleging that he truly believes that the person on whose account the writ is sought is illegally confined or deprived of his liberty" and, at subsection (a), the statute specifies venue in the judicial district "in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty." Section 52-470
provides that a court hearing on habeas corpus petition shall "inquire fully into the cause of imprisonment."
The Connecticut Supreme Court, in Lozada v. Warden,223 Conn. 834, 842 (1992) noted that it "h[as] not resolved the precise limits of [the] scope [of a petition for habeas corpus] for challenges that do not involve release." Before noting its lack of a ruling on the availability of habeas to resolve issues other than the proceedings leading to confinement, the court observed, that "[t]he writ of habeas corpus, as it is employed in the twentieth century, however, does not focus solely upon a direct attack on the underlying judgment or upon release from confinement" Lozada, supra, at 841-2, and listed cases in which the writ had been used to address such issues as undue appellate delay, Gaines v. Manson, 194 Conn. 510 (1984); conditions of confinement, Arey v. Warden, 187 Conn. 324 (1982); claims of First Amendment deprivation in prison, Roque v. Warden, 181 Conn. 85
(1980), and extradition practices, Negron v. Warden, 214 Conn. 23
(1990).
When prisoners raised by way of a petition for habeas corpus their claim that they were constitutionally entitled to listen to CT Page 2312 radios while incarcerated, the Supreme Court reviewed the case on the merits of the prisoners' First Amendment claim and then concluded that it need not resolve the procedural issue whether habeas had been the proper vehicle for raising the claim. Sanchez, supra, at 34-35. Noting that the respondent had not raised the possible availability of a civil suit pursuant to42 U.S.C. § 1983 as an alternative that could have been pursued, the Supreme Court stated that "we await a more suitable occasion to decide whether the scope of habeas corpus should be broadened to include challenges to conditions of confinement when 1983 may be a viable alternative for presenting the petitioner's claims."
Since Lozada involved claims of ineffective assistance of counsel, the court did not, in that case, and has not, in any other case, referred to the issue of the availability of the writ to challenge living conditions during confinement.
The Appellate Court, has, however, addressed the issue in Vincenzo v. Warden, 26 Conn. App. 132 (1991). In that case, incarcerated prisoners filed a habeas petition alleging that that state board of parole had failed to adopt regulations pursuant to the Uniform Administrative Procedures Act. The trial court dismissed the petition, finding that the petitioners had not stated a claim within the scope of habeas relief.
The Appellate Court upheld the dismissal of the petition, stating that since an inmate "has no liberty interest in or right to parole release, it follows a fortiori that he cannot invoke a court's subject matter jurisdiction in a habeas action by claiming his confinement is illegal based on a parole board's failure to adhere to rule-making procedures." Vincenzo, at 143-44. The court reasoned that "there must be a sufficient nexus between the allegedly illegal action and the legality of his custody for a habeas corpus to lie." Vincenzo, at 142.
Plainly, the Appellate Court in Vincenzo did not discuss "liberty" in the sense of civil rights in general, but in the particular sense of freedom from being held in any form of state custody. Finding, at 141-42, that adherence to rule-making procedures by the parole board could not have conferred on the petitioner a right to his liberty, and that a departure by the board from requirements for rule-making did not render his custody illegal, the Appellate Court reasoned that the substance of the complaint was not one that could be raised by a habeas petition because an inmate has "no liberty interest in or right CT Page 2313 to parole release." Vincenzo at 143. Unmistakably, the Appellate Court has taken the position that a habeas petitioner must identify an entitlement not to be held in custody.
In Vincenzo, at 136, the Appellate Court adopted the approach of the Supreme Court of the United States in Preiser v. Rodriguez, 411 U.S. 475, 193 S.Ct 1927, 36 C.S.C.2d 439 (1973) that habeas, both at common law and under the federal habeas statute, is available to attack the fact or duration of custody, but not as a means to raise other complaints, such as the conditions of prison life. The Court of Appeals for the Second Circuit, in Abdul-Hakeem v. Koehler, 910 F.2d 66, 68 (2d Cir. 1990), characterizes Preiser as the case in which the Supreme Court "enunciated the touchstone for determining whether habeas corpus (28 U.S.C. § 2254) or 42 U.S.C. § 1983 is the proper vehicle for the prisoner's suit." The Supreme Court stated in Preiser, at 411 U.S. 500, that "when a prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus" and that, on the other hand, "a 1983 action is a proper remedy for a state prisoner in making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody" id. at 499.
This court comprehends Vincenzo as binding precedent limiting habeas relief under Connecticut's statute to attacks on the fact of being held in custody or the duration of custody. The court in Vincenzo, at 143, emphasized that the petitioner in that case did not challenge the propriety of his conviction. The petitioners herein do not attack their convictions but only the circumstances of prison life. The liberty interest they invoke is not a right to be released but religious liberty during their incarceration, the legality of which incarceration they do not challenge.
It may be that the petitioner is interpreting the use of the word "liberty" in 52-466 C.G.S. as a broad authorization to use habeas petitions to raise any and all claims of deprivation of liberty. The statute refers to a person "illegally confined or deprived of his liberty;" however the second phrase must logically be interpreted to refer to curtailment of physical liberty. Since confinement is not the only form of state custody, which includes such lesser physical restrictions as parole and probation, and since habeas relief is available to those subject CT Page 2314 to these other forms of restraint on physical liberty, see e.g. Murray v. Lopes, 205 Conn. 27 (1987), the statute indicates merely that other forms of physical custody besides incarceration are subject to challenge by habeas, not that all prison conditions that affect other "liberties" such as religious liberty, are subject to habeas relief.
Pursuant to the limiting construction of 52-466 C.G.S. indicated by the Appellate Court, this court finds that the claims of the petitioners herein cannot be raised by a petition for habeas corpus, since they do not challenge their convictions and incarceration but the conditions of prison life.
The petition for a writ of habeas corpus is dismissed.
MANDAMUS ACTION
The only ground stated for dismissal of the petitioners' mandamus action in the motion to dismiss is lack of subject matter jurisdiction. In his brief, the respondent Commissioner of Corrections argues the merits of the claim for mandamus relief but does not establish an absence of subject matter jurisdiction to determine the dispute.
Mandamus is an extraordinary remedy designed to enforce a plain positive duty to which the plaintiff has a clear legal right to performance. West Hartford Taxpayers Association, Inc. v. Streeter, 190 Conn. 736, 740 (1983). This court has subject matter jurisdiction to decide cases in which mandamus is the requested relief. id. The respondent, in his brief, has urged that the plaintiffs do not have a clear legal right to the changes in living conditions they seek. This response does not, however, support the ground actually set forth in the motion to dismiss — lack of subject matter jurisdiction — but constitutes an attack on either the legal sufficiency of the complaint (which is properly raised by a motion to strike) or on the merits of the claim. Pursuant to 142 P.B., a motion to dismiss can be used only to contest jurisdiction. A prediction that the plaintiffs will not ultimately prevail on the merits of their mandamus action does not support a conclusion that the court is without jurisdiction to hear the matter.
The respondent alleges that the petitioners have raised some or all of the same claims in pleadings filed in United States District Court. The respondent has not alleged that the federal CT Page 2315 lawsuit was filed prior to the instant mandamus action, nor has he supported any theory of federal preemption or exclusive jurisdiction. While the respondent advocates that the petitioners confine their challenges to a 1983 suit in federal court, he has not demonstrated that the court lacks subject matter jurisdiction over the mandamus action they have instead chosen to file in this court.
CONCLUSION
The motion to dismiss/quash is granted as to the application for writ of habeas corpus. The motion to dismiss the mandamus action is denied.
Beverly J. Hodgson Judge of the Superior Court