[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his petition filed May 29, 2001, petitioner seeks a writ of habeas corpus claiming a violation of his constitutional rights because of the conditions of his confinement.
For reasons hereinafter stated, the petition is dismissed.
Petitioner has set forth in his petition certain specific conditions which he claims violate his rights. These conditions are: a) that he is forced to eat in his cell where there are numerous flies; b) the water in his cell is rust colored, stinks and has a bittersweet taste which upsets his stomach. CT Page 1039
The evidence indicates that petitioner is a sentenced prisoner in the custody of respondent. Petitioner is also in the custody of respondent awaiting trial. Petitioner was previously convicted of murder, attempted murder and other charges. This conviction was reversed on appeal. The matter was remanded for a new trial and petitioner is being held on a bond awaiting retrial. State v. Debarros, 58 Conn. App. 673 (2000), cert. denied 254 Conn. 931 (2000).
Although plaintiff did not testify about the quality of water, there was evidence that the water at Corrigan Correctional Institute where petitioner has been confined has always been potable. The water is produced from wells which are tested on a regular basis. Tests are regularly performed at the other end of the pipeline also. Although it is possible for the water to have been discolored at times due to normal usage, it was always potable. On those occasions when discrepancies were revealed through testing, prompt action was taken to resolve the problems. There was never any danger to the inmates and outbreaks of infections or diseases which could have been traced to problems with the water never occurred.
Petitioner testified to a large number of small flies which infest his cell and shower area. Since these flies are present in his cell, he claims that they are a health hazard. The flies appear to breed in the drainage system and come out from the sink drains in his cell and the shower drain. Petitioner testified that he has been bitten by the flies requiring him to go to sick call where he was given ointment to apply.
Although petitioner's medical records do not show any notation of this type of treatment, it is possible that he could have received ointment for a very minor problem with instructions to return if it became more serious. There is no record of any follow-up treatment. Petitioner has testified as to the infestation of flies, but there is no record of correction officers and staff who are required to be in the cell area complaining about the flies and there is no record of any outbreak of diseases or infections which could result from any large infestation.
There is a regular maintenance effort to reduce the flies in the drainage system by pouring bleach down the drains. This treatment is effective, but better coordination between the maintenance workers and correction officers to make certain that the showers are closed for a period of time after the bleach is applied will improve treatment.
Petitioner's principal concern is that he is required to eat his meals in his cell although there is a mess hall available for inmates. The evidence indicates that petitioner is housed in B unit which is on the lower level of the facility. Inmates in the upper level of the facility CT Page 1040 are fed in the mess hall. In the B unit, where petitioner is housed, for security reasons respondent requires that the inmates eat all meals in their cells. Eating in the cell is often inconvenient and the cleanliness of the cell depends on cooperation between cell mates.
Petitioner has no constitutional right to eat in the mess hall. This is a decision which is entirely within the discretion of respondent who has elected to require people in petitioner's category to eat in their cells for security reasons.
Petitioner is a prisoner within the custody of respondent. If the quality and proprieties of his detention result in deprivation of his constitutional rights, in addition to the rights which his sentence may have constitutionally deprived him, doubts may be cast on the legality of his confinement. Dukuly v. Warden, 34 Conn. Sup. 88, 93 (1977). In this case, the quality and proprieties of petitioner's detention have not resulted in any constitutional deprivation of his rights.
Accordingly, the petition is dismissed.
 ___________________ Joseph J. Purtill, Judge Trial Referee