[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE RESPONDENT'S MOTION TO DISMISS
On May 24, 2002, the Respondent filed a Motion to dismiss the instant Petition for Habeas Corpus on the grounds that the petitioner failed to state grounds upon which relief could be granted. The Motion was initially granted on the papers by the Court, Barry, JTR, but later set aside, as the Petitioner had not been afforded an opportunity for oral argument as he had requested. The Motion then came on for argument before the Court, Fuger, J, on September 30th, 2002. At argument, the Warden asserted that this Court lacked subject matter jurisdiction of this petition because the proper place in which to litigate a matter that does not attack the legality of the confinement (commonly referred to as "conditions of confinement") is through the use of a proceeding in the Federal Courts under the auspices of 42 U.S.C. § 1983.[1] Further, the Warden asserts that allegations of unlawful restraints during exercise periods, such as the subject of this petition, do not state a claim upon which relief may be granted.
Although inartfully drafted, the Amended Petition does allege that the Respondent is violating the 8th Amendment right of the Petitioner to be free of cruel and unusual punishment. The petition alleges that the use of "iron restraints has caused the petitioner serious health problems to his back, knees and has also exacerbated his asthmatic condition." Without addressing the merits of the Petitioner's claim, it is clear that his Amended Petition does, at least on its face, state a ground (the imposition of cruel and unusual punishment) upon which this Court could grant relief. To say that the Petitioner has properly raised the issue does not, in any way, say that the Petitioner is, therefore, entitled to relief. However, when considering the question as to whether the Petitioner should be denied the opportunity to even attempt to present his case to the Court through a dismissal of the proceedings, it is enough to permit the case to move forward so long as an adequate ground upon which such relief could be granted has been alleged. "If the CT Page 12614 nonjudgmental aspects of restraint lead to restraint that has unconstitutional qualities and properties, a question is raised as to the legality of the detention." Dukuly v. Warden, 34 Conn. Sup. 88, (1997) at 93.
The major thrust of the Respondent's argument is that the use of a Writ of habeas corpus is not the appropriate mechanism by which to resolve "Conditions of Confinement" cases. The Respondent relied heavily upon the decision of our Supreme Court in Sanchez vs. Warden, 214 Conn. 23,570 A.2d 673 (1990), in which the Court added, in dicta at page 34-35, that: "The respondent has also raised the issue of whether the remedy of habeas corpus should be made available for prisoners to attack the conditions of their confinement rather than its legality. The respondent filed motions to quash raising this issue in the trial court, which were denied. . . . It is not self-evident that the standard relief granted in a habeas corpus action, discharge of the prisoner unless the violation of his rights is corrected, is necessarily more efficacious than the relief available to a successful [42 U.S.C. § 1983] plaintiff.
"Because the respondent has not, either on appeal or in the trial court, raised the possible availability of 1983 as an alternative that the petitioners in this case could have pursued, it would be inappropriate for us at this time to resolve the issue of whether a 1983 action rather than a petition for a writ of habeas corpus should have been the procedural vehicle utilized. Neither party has briefed the question. Accordingly, we await a more suitable occasion to decide whether the scope of habeas corpus should be broadened to include challenges to conditions of confinement when 1983 may be a viable alternative for presenting the petitioner's claims." (emphasis added)
In another decision, two years later, the Connecticut Supreme Court once again declined to resolve this issue. "The respondent also argues that the writ is available only to attack the validity of the underlying criminal judgment or to challenge a wrongful confinement. . . . Although we have not resolved the precise limits of its scope for challenges that do not involve release; Sanchez v. Warden, 214 Conn. 23, 34, 570 A.2d 673
(1990); we need not delve into that quagmire to resolve this case." (emphasis added). Lozada v. Warden, 223 Conn. 834, 613 A.2d 818 (1992) at 841. It must be noted, however, that the United States Supreme Court has observed that "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody. . . . This isnot to say that habeas corpus may not also be available to challenge suchprison conditions. See Johnson v. Avery, 393 U.S. 483 (1969); Wilwordingv. Swenson, supra, at 251. When a prisoner is put under additional and CT Page 12615 unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal. Preiser vs. Rodriquez, 411 U.S. 475 at 499 (1973). (emphasis in the original)
Since a clear answer has still not been forthcoming on this issue, this Court finds it necessary to examine some of the history of the Writ ofhabeas corpus.
The Writ of habeas corpus is an ancient and time-honored component of our Anglo-American jurisprudence. One of its earliest recorded appearances was in the late 13th century, around the time that the great Scot patriot, Sir William Wallace, was pursuing the cause of freedom for Scotland. "We do well to bear in mind the extraordinary prestige of the Great Writ, habeas corpus ad subjiciendum, in Anglo-American jurisprudence: `the most celebrated writ in the English law.' 3 Blackstone Commentaries 129. It is `a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I." Fayvs. Noia, 372 U.S. 391 at 399 (1963). When the United States achieved independence from England, the writ was embodied in our law as well. "Received into our own law in the colonial period, given explicit recognition in the Federal Constitution, Art. I, § 9, cl. 2, incorporated in the first grant of federal court jurisdiction, Act of September 24, 1789, c. 20, § 14, 1 Stat. 81-82, habeas corpus was early confirmed by Chief Justice John Marshall to be a `great constitutional privilege.' Ex parte Bollman and Swartwout, 4 Cranch 75, 95." Fay vs. Noia, infra at 400 (1963).
Given the history of this writ, it would be a draconic and drastic measure to take the step of denying access to the courts by granting the Respondent's motion to dismiss. "[I]t is not simply a question of state procedure when a state court of last resort closes the door to any consideration of a claim of denial of a federal right. And that is the effect of the denials of habeas corpus in a number of cases now before this Court, for in none of the cases does the Attorney General suggest that either of the other two Illinois post-trial remedies, writ of error and coram nobis, is appropriate. Unless habeas corpus is available, therefore, we are led to believe that Illinois offers no post-trial remedy in cases of this kind." Young v. Ragen, 337 U.S. 235 at 238
(1949). It could be argued that since the 42 U.S.C. § 1983 action is available to the Petitioner[2], that the use of habeas corpus is CT Page 12616 inappropriate. Nevertheless, the Connecticut Supreme Court has clearly recognized the availability of the writ to challenge conditions of confinement. Arty vs. Warden, 187 Conn. 324 (1982).
Our Supreme Court has recently reiterated its recognition that a challenge to the conditions of confinement may also constitute a challenge to the legality of the confinement itself. While the following is a lengthy excerpt from the case, it clearly shows the current thinking of the Supreme Court.
 "We [next take] note of the basic purpose underlying what is one of the most extraordinary and unique legal remedies in the procedural armory of our law. . . . Although it is true that the United States Supreme Court has not always followed an unwavering line in its conclusions as to the availability of [t]he [writ of habeas corpus] . . . from the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention. English legislation and common law have been recognized by the United States Supreme Court as authoritative guides in applying the writ in the federal courts. McNally v. Hill, 293 U.S. 131, 136-37, 55 S.Ct. 24, 79 L.Ed. 238 (1934), overruled on other grounds, Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).
"In applying federal habeas statutes, the United States Supreme Court has said that [t]he purpose of the proceeding defined by the statute was to inquire into the legality of the detention. . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law. McNally v. Hill, [supra, 293 U.S. 136-37]; see also Engle v. Isaac, 456 U.S. 107, 136, [102 S.Ct. 1558, 71 L.Ed.2d 783] (1982) (Stevens, J., concurring in part and dissenting in part) (relief available to a prisoner only if he is held in custody in violation of the constitution or laws or treaties of the United States); Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ([i]t is clear, not only from the language of [the federal habeas CT Page 12617 statutes], but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody); Fay v. Noia, [372 U.S. 391, 402, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)] (writ's root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment; if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release); [H. Hart H. Wechsler, The Federal Courts and the Federal System (3d Ed. 1988) p. 1468] (Great Writ always serves the function of precipitating a judicial inquiry into a claim of illegality in the petitioner's detention for the purpose of commanding his release, or other appropriate disposition.); P. Bator,
`Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,' 76 Harv. L. Rev. 441, 444-45 (1963) ([i]ts function, in the great phrase, is to test "the legality of the detention of one in the custody of another). . . .
 "The history of our own jurisprudence is wholly in accord with these principles. Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." Johnson vs. Commissioner of Correction, 258 Conn. 804 at 813 (2002).
In consideration of all of the above, it is clear that the writ of habeas corpus is an appropriate vehicle by which a person in custody may contest the conditions of his or her confinement. While some of the signals coming out of the Connecticut Supreme Court have hinted at a possible contraction upon the use of the writ, there has been no holding that does so. In the absence of such an express holding by the Court, it is clear from the available precedents that the writ of habeas corpus may CT Page 12618 be used to challenge conditions of confinement. "Given the rule that incarcerated persons must have an access to a post-conviction proceeding that permits them to make a claim of nonjudgmental illegality of confinement, there is a persuasive practical consideration for holding that the writ is available in cases such as that brought by the subject petition. The only practical procedure now provided in this state for access to the courts for the assertion of constitutional claims by inmates is that of a petition for a writ of habeas corpus. Habeas corpus is the only procedure that does not impose the handicap of court costs and counsel fees. It is the only procedure that can be initiated by merely marking a box in a form provided by the department of correction. To adopt the defendant's view, that habeas corpus is a remedy only when the inmate is challenging the legality of the judgment of conviction, would effectively deny a hearing on claims of inmates that, since their convictions, they have been illegally detained because of acts not related to the original judgment. The court should not adopt a rule that will have that practical consequence." Dukuly vs. Warden, 34 Conn. Sup. 88
at 99 (1997).
Accordingly, the Respondent's Motion to Dismiss is denied.
S.T. Fuger, Jr., Judge