JACQUELINE WRIGHT ET AL. *v.* PHILIP HUTT
(AC 17063)

Landau, Spear and Sullivan, Js.

Argued March 31—officially released September 22, 1998

*Steven D. Jacobs*, for the appellants (plaintiffs).

*Paul T. Edwards*, with whom, on the brief, was *Craig A. Fontaine*, for the appellee (defendant).

### Opinion

SULLIVAN, J. The plaintiffs in this medical malpractice action, Jacqueline Wright and William Wright, appeal from the judgment in favor of the defendant. The plaintiffs claim that the trial court improperly refused to permit them to exercise a peremptory challenge to excuse a juror after the jury was impaneled but prior to its swearing in, and improperly ruled on the admissi-

bility of certain documentary and testimonial evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1986, the plaintiff Jacqueline Wright sought medical treatment from the defendant for jaw pain associated with injuries she suffered in an automobile accident in 1984. Jacqueline Wright had been referred to the defendant by her treating oral surgeon and employer, Stanton Wolfe. The defendant recommended that she undergo surgery to replace her temporomandibular joints with an implant device manufactured by Vitek, Inc. In August, 1986, the defendant performed the recommended surgery on Jacqueline Wright's right jaw and performed the same surgical procedure on her left jaw in February, 1987. Thereafter, in 1989, after receiving complaints from her of pain in her jaw, the defendant discovered that the Vitek implant device in her left jaw had fractured. The defendant removed both implant devices in 1990 and replaced them with grafts made from cartilage taken from her ears. By that time, she had lost confidence in the defendant's ability to treat her and discontinued their relationship. After the surgeries, Jacqueline Wright experienced bone loss in her temporomandibular joints and underwent further surgeries and therapies to reconstruct the joints and to inhibit further bone loss. In 1992, the plaintiffs instituted this medical malpractice action against the defendant. The first count of the complaint alleged that the defendant was negligent in failing to obtain Jacqueline Wright's informed consent to the implant surgery, and the second count asserted a claim of loss of consortium on behalf of William Wright.

I

The plaintiffs' first claim is that the trial court's refusal to permit them to exercise a peremptory challenge to excuse a juror violated their right under the

constitution of Connecticut, article first, § 19,[1] to challenge jurors peremptorily and, in the alternative, that it constituted an abuse of discretion.

On the day prior to the commencement of trial, after the conclusion of the jury selection process, one of the venirepersons selected as a juror informed the court that he and his wife had lost their jobs a few days after he was selected and that, as a result, it would be difficult for him to concentrate on the trial and to fulfill his obligations as a juror. The trial court explained that it did not consider his loss of employment to be a sufficient reason for disqualification. The court then permitted the parties to ask the juror questions. Under questioning by counsel for the plaintiffs, the juror stated that he believed that his personal concerns would impair his ability to sit fairly as a juror. The trial court then stated: "Well, the last comment you made troubles me. Most of all that you don't think you could sit fairly because, I think if it's a matter of concentration, I'm almost willing to give it a try and start the process and see how it works for you. If there is a problem that develops during the trial you could always possibly be excused at a later time, although I'm not really keen on doing that. So, if it's a concentration matter, that's one thing. But if you're saying that you don't think you can hear the matter fairly—" The juror interrupted, stating: "No, that's not what I meant. But if my full concentration is not in it, I don't think I'm being fair to either party nor the jury, nor yourself."

In response to questions by the defendant, the juror stated: "I—that's really something—as far as being fair, as I explained to [His] Honor before, I really don't see a problem being fair and impartial as much as just

---

[1] Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides in relevant part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily . . . ."

on the whole not being able to devote my complete attention to the situation, and whether that be at the beginning, middle, or end [of the trial] I could not tell you." The court told the juror: "I get the sense from what you're saying that you will be fair. I don't think that's an issue here. I think you have a fear that your personal problems may get in your way of concentration, and we don't know if that's going to happen or not. . . . If things develop where you really find that it's a problem as we go along, then I will hear further at that point and consider the matter at another time." At that point, counsel for the plaintiff requested permission to exercise a peremptory challenge, which the court denied.

The provision of the Connecticut constitution invoked by the plaintiffs to support their claim of a constitutional violation is not conclusive of the merits of that claim. The constitution does not address the time and manner in which the right may be exercised, although it is well settled that " '[o]nce a juror has been accepted by both parties, the absolute right to exercise a peremptory challenge is lost. *Walczak* v. *Daniel,* 148 Conn. 592, 596–97, 172 A.2d 915 (1961); *DeCarlo* v. *Frame,* 134 Conn. 530, 535, 58 A.2d 846 (1948); *State* v. *Potter,* 18 Conn. 166, 176 (1846). The trial court may, however, "in its discretion permit such a challenge to be made at any time before the jury is sworn." *Walczak* v. *Daniel,* supra, 597, quoting *DeCarlo* v. *Frame,* supra [535].' " *State* v. *Daniels,* 42 Conn. App. 445, 452–53, 681 A.2d 337, cert. denied, 239 Conn. 928, 683 A.2d 397 (1996).

In Connecticut, after the parties accept a venireperson as a juror, the right to exercise a peremptory challenge is within the discretion of the trial court. Id., 453–54. This conclusion is supported by *DeCarlo* v. *Frame,* supra, 134 Conn. 535. In that case, the defense sought to exercise a peremptory challenge after the

conclusion of the examination of all jurors, but prior to their being sworn in. Our Supreme Court concluded that the trial court acted improperly in granting the defendant's request because the trial court "did not permit the challenge in the exercise of its discretion but in effect ruled that the defendant was entitled to make it as a matter of right . . . ." Id., 535–36.

We find that the trial court appropriately exercised its discretion in this case. The record indicates that the trial court was satisfied that the juror's concern about his ability to concentrate on the trial would not affect his duty to be fair and impartial. Indeed, the juror informed the court that his personal problems would not prevent him from being fair and impartial. Although "a prospective juror's assessment of his or her own partiality must be carefully scrutinized on appeal and considered in the context in which it was uttered"; *State* v. *Esposito*, 223 Conn. 299, 311, 613 A.2d 242 (1992); the trial court reasonably credited the juror's assurance of fairness. Indeed, counsel for the plaintiff, when asked for his position on the matter by the trial court, stated: "I think that this gentleman is bending over backward to be fair to everyone, to the court, to the attorneys, to the parties and to himself. And *he strikes me as being a completely honest and fair-minded guy* . . . ." (Emphasis added.)

In addition, the trial court properly observed that the juror exhibited merely a fear of losing concentration. For example, in response to a question by the plaintiff's counsel regarding whether the juror could devote his full attention to the case, the juror stated: "I *feel* at this point that I *don't think* I could, no." (Emphasis added.) The court concluded that this fear was unrealized and, therefore, it did not, as of that time, present a ground for removal. In addition, the juror informed the court that he had already started another job.

On this record, we cannot conclude that the trial court abused its discretion in denying the plaintiffs' request to exercise a peremptory challenge after the conclusion of the voir dire process.

## II

The remaining issues raised by the plaintiffs on appeal are founded on claims of evidentiary error. "It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998).

## A

The plaintiffs first claim that the trial court improperly excluded from evidence a letter from the Food and Drug Administration to Vitek, Inc., regarding that agency's approval of the Vitek implant device. The defendant objected to introduction of the letter on the grounds that it was not relevant to any issue regarding the approval of the device at the time it was used to treat the plaintiff, that the letter was hearsay and that its prejudicial effect outweighed its probative value. The plaintiffs argued that the document was admissible as an exception to the hearsay rule because it was an "official document." They also argued that the document was relevant to the issue of the agency's approval of the device, to which the defendant "opened the door"

in his direct examination of Jacqueline Wright, and that the letter was necessary to impeach the defendant's testimony.[2] The trial court sustained the defendant's objection, but did not state the basis for its ruling.

The record reveals that the letter was written by an associate director for device evaluation, bureau of medical devices of the Food and Drug Administration, Department of Health and Human Services. The plaintiffs obtained the letter through a request under the Freedom of Information Act, General Statutes § 1-18a et seq. The letter was accompanied by an affidavit of an employee from the Department of Health and Human Services attesting to the fact that the letter was produced in compliance with the act, and the letter bears a certification from the freedom of information commission. As noted earlier, in response to the defendant's assertion that the letter was inadmissible hearsay, the plaintiffs argued that it was admissible as an exception to the hearsay rule because it was an "official document."

"An official certificate simply authenticates a document, that is, it proves that it is what it purports to be. It is not a hearsay exception that permits the contents of a certified document to be used to prove the truth of the matter asserted. Any and all assertions of fact contained within a certified document must be proven by the usual rules of evidence and must satisfy the hearsay rule or its exceptions." C. Tait & J. LaPlante,

---

[2] The plaintiffs argue for the first time on appeal that the letter was relevant to the issue of informed consent. They claim that the defendant misled Jacqueline Wright on the issue of the device's approval, thereby breaching the standard of care owed to her. We decline to review the court's ruling on the admissibility of the letter for this reason because appellate review of evidentiary rulings is limited to the specific grounds raised by a party at trial. *Pajor* v. *Wallingford*, 47 Conn. App. 365, 371, 704 A.2d 247 (1997), cert. denied, 244 Conn. 917, 714 A.2d 7 (1998). Thus, whatever the merit of the plaintiffs' argument with respect to the relevance of the letter to the issue of informed consent, it cannot serve as a basis for reversing the judgment. Id., 372.

Connecticut Evidence (1993 Sup.) § 10.5.1, p. 120. Here, the plaintiffs did not attempt to introduce the letter under one of the exceptions to the hearsay rule, such as the business records exception; see General Statutes § 52-180; but rather relied on the rules for authentication of documents to support its admission into evidence. Accordingly, the plaintiffs failed to establish that the letter was admissible as an exception to the hearsay rule. Furthermore, the plaintiffs' argument that the letter was relevant to impeach the defendant's testimony that the device had been approved by the Food and Drug Administration is equally unavailing. The letter bears a date from 1980, approximately seven years prior to the date the Vitek implants were used to treat the plaintiff. Thus, any evidence that the implants were not approved in 1980 is not necessarily relevant to the status of the approval in 1986 and 1987. We conclude that the trial court did not abuse its discretion in sustaining the defendant's objection to the introduction of this letter.

B

The plaintiffs next assert that the court abused its discretion in refusing to allow the plaintiffs' medical witnesses to testify about surgical and nonsurgical alternatives to the Vitek implants that were available to the plaintiffs. The plaintiffs contend that this testimony was relevant to their claim that the defendant was negligent in failing to obtain Jacqueline Wright's informed consent. The defendant asserts that the trial court properly excluded such testimony because the plaintiffs' negligence claim was not based on the defendant's failure to inform Jacqueline Wright of alternative procedures.

In *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 465 A.2d 294 (1983), our Supreme Court had occasion to consider the doctrine of informed consent as the basis for medical malpractice liability. In considering a physician's duty to disclose information about alternative

treatments, the court adopted the lay standard, namely, that a physician has "a duty to disclose such information as a reasonable patient would consider material to the decision whether or not to undergo treatment or diagnosis." (Internal quotation marks omitted.) Id., 292. The court noted that "[t]he standard has been further delineated by specifying various elements which the physician's disclosure should include: (1) the nature of the procedure, (2) the risks and hazards of the procedure, (3) the alternatives to the procedure, and (4) the anticipated benefits of the procedure." (Internal quotation marks omitted.) Id. Under *Logan,* the elements of a physician's duty of disclosure under the doctrine of informed consent include the duty to disclose alternative medical procedures.

The plaintiffs based their negligence claim on a breach of the duty to inform the plaintiff of the risks associated with the Vitek implants and not on a breach of the duty to inform the plaintiff of medical alternatives.[3] The procedural history of this case reveals that on

---

[3] The plaintiffs' operative complaint contains the following relevant allegations:

"13. At the time of the August, 1986, and February, 1987 surgeries, the customary *standard of care* of physicians in the same practice as that of the defendant *was to obtain the patient's consent* prior to performing the operations which the defendant performed.

"14. Dr. Hutt *did not inform* Mrs. Wright prior to the August, 1986, and February, 1987 surgeries *that* the use of the Teflon proplast temporomandibular joint *implants* in those procedures *might cause injury* to Mrs. Wright; or of *defects* inherent in the Teflon proplast two implants and/or *complications* known about the Teflon proplast two implant or what the *consequences of such injuries* would be involving the Teflon proplast temporomandibular joint implant.

"15. *Because of that negligence,* Mrs. Wright's consent to have the operations performed *was not an informed consent,* and she was subjected to the risk of an injury to her temporomandibular joints and connected anatomy, which injuries she did suffer.

"16. Mrs. Wright's *injuries and losses* were *caused by* the *failure* of the defendant *to inform* her *of* the *risks* involved in that surgery.

"17. The defendant was negligent in one or more of the following ways, in that:

February 26, 1996, the trial court denied the plaintiffs'
request to revise the complaint to include allegations
that the defendant failed to inform Jacqueline Wright
of surgical and nonsurgical alternatives to the implants.
The defendant objected to the requested amendment
on the ground that the claim was time barred and that
inclusion of the claim in the case immediately prior to
trial would be unfairly prejudicial. The court sustained
the defendant's objection. Thereafter, on March 12,
1996, the defendant filed a motion in limine seeking to
preclude the plaintiffs from introducing expert opinion
testimony concerning surgical and nonsurgical alterna-
tives to the Vitek implants. This motion was granted
on March 15, 1996, and it served as the basis of the trial
court's rulings sustaining the defendant's objections to
introduction of evidence relating to surgical and nonsur-
gical alternatives.[4]

"The principle that a plaintiff may rely only upon
what he has alleged is basic. . . . It is fundamental in
our law that the right of a plaintiff to recover is limited
to the allegations of his complaint. (Citations omitted.)
*Matthews* v. *F.M.C. Corporation*, 190 Conn. 700, 705,
462 A.2d 376 (1983). What is in issue is determined by

"a. He *failed to inform* Mrs. Wright *of* the *possibility of injury* resulting
from the surgical implantation of the Teflon proplast temporomandibular
joint implants and in *failing to explain* to her what the *consequences of
such injuries* would be;

"b. He used the Vitek Proplast II temporomandibular joint implant when
he knew or in the exercise of reasonable care should have known that it
was not reasonably safe to do so;

"c. He failed to timely remove the Vitek Proplast II temporomandibular
joint implant." (Emphasis added.)

[4] The plaintiffs do not raise on appeal the propriety of the trial court's
ruling granting the defendant's motion in limine and did not request an
articulation of it. In any event, we note that "[a] trial court has wide discretion
in granting or denying amendments to the pleadings and rarely will [a
reviewing] court overturn the decision of the trial court." (Internal quotation
marks omitted.) *Capitol Restorations Corp.* v. *Construction Services of
Bristol, Inc.*, 25 Conn. App. 681, 685, 596 A.2d 927 (1991).

the pleadings and these must be in writing. *Telesco* v. *Telesco*, 187 Conn. 715, 720, 447 A.2d 752 (1982). Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein. *Arey* v. *Warden*, 187 Conn. 324, 332, 445 A.2d 916 (1982). . . . A judgment upon an issue not pleaded would not merely be erroneous, but it would be void. See *Telesco* v. *Telesco*, supra [720]." *Tehrani* v. *Century Medical Center, P.C.*, 7 Conn. App. 301, 308, 508 A.2d 814 (1986).

We conclude, on the basis of the foregoing principles, that the trial court did not abuse its discretion in excluding evidence of alternatives to the Vitek implants because the plaintiffs failed to allege a breach of duty on this ground.

C

The plaintiffs next claim that the trial court improperly precluded the testimony of two medical witnesses, Stanton Wolfe, the director of mental health for the state of Connecticut, department of public health, and Norman Cavanagh, an oral and maxillofacial surgeon, from testifying about facts within their personal knowledge. The plaintiffs contend that the trial court mistook fact testimony for opinion testimony in restricting the plaintiffs' examination of those witnesses.

The procedural history of the case reveals that on March 15, 1996, the trial court granted the defendant's motion to preclude expert testimony from both physicians because the plaintiffs failed to comply with the provisions of Practice Book § 220 (D), now § 13-4 (4).[5]

---

[5] Practice Book § 13-4 provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such expert shall not testify if, upon motion to preclude such testimony,

See *Perez* v. *Mount Sinai Hospital*, 7 Conn. App. 514, 518, 509 A.2d 552 (1986) (upholding directed verdict where trial court excluded expert testimony of plaintiff's treating physician because plaintiff failed to respond to interrogatories requesting disclosure of identity of expert witnesses under § 220 [A]). "The decision to preclude a party from introducing expert testimony is within the discretion of the trial court. *Sturdivant* v. *Yale-New Haven Hospital*, [2 Conn. App. 103, 107, 476 A.2d 1074 (1984)]. On appeal, that decision is subject only to the test of abuse of discretion. *Kemp* v. *Ellington Purchasing Corporation*, 9 Conn. App. 400, 405, 519 A.2d 95 (1986). The salient inquiry is whether the court could have reasonably concluded as it did. *Sturdivant* v. *Yale-New Haven Hospital*, supra, 108." *Yale University School of Medicine* v. *McCarthy*, 26 Conn. App. 497, 500–501, 602 A.2d 1040 (1992). "We have previously held and continue to hold that the disclosure requirements of Practice Book § 220 (D) apply with equal force to treating physicians as well as to independent experts." (Internal quotation marks omitted.) *Sung* v. *Butterworth*, 35 Conn. App. 154, 158, 644 A.2d 395 (1994), appeal dismissed, 235 Conn. 400, 665 A.2d 893 (1995). The trial court properly precluded these witnesses from testifying about the applicable standard of care in this case and about their opinions regarding the defendant's breach thereof.

The defendant argues that as a result of the trial court's ruling, any testimony by those witnesses, factual or otherwise, necessarily would be unrelated to the issue of liability and, therefore, its preclusion could not have affected the result in this case. A review of the trial transcript reveals that the plaintiffs asked Wolfe

the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

to define specific medical terms, so as to illustrate the difference between certain medical conditions, and to explain the meaning of terminology and notations on his medical records. The plaintiffs asked Cavanagh to explain the difference between certain medical conditions, why bone is harvested from one area of the body as opposed to another, why he recommended certain treatment for Jacqueline Wright, why a certain blood test was administered to her and what he knew about certain drugs.

The effect of the trial court's evidentiary rulings was to limit the scope of the direct examination of the witnesses to their observations of Jacqueline Wright's medical condition. As treating physicians, they could testify to their care and treatment of the plaintiff. See *Sung* v. *Butterworth*, supra, 35 Conn. App. 158. The trial court limited their testimony to facts within their personal knowledge as treating physicians, such as their observations of Jacqueline Wright's medical condition, in an effort to prevent them from testifying to their opinions on such facts. The questions the plaintiffs sought to ask of Wolfe and Cavanagh, however, were based on their special skills or knowledge as medical doctors and were matters outside the ordinary knowledge of the jurors. The trial court properly excluded the testimony, and we find no abuse of discretion in this regard.

D

The plaintiffs next contend that the trial court improperly precluded Jacqueline Wright's psychotherapist from testifying about her anxieties concerning her medical condition and improperly precluded the plaintiffs' medical expert from testifying about her future medical treatment.

The testimony that the plaintiffs sought to introduce through these witnesses was relevant to Jacqueline

Wright's claims for pain and suffering, mental distress and future medical expenses, all of which are components of the damages element of the plaintiffs' negligence claim. The jury found for the defendant, however, on the issue of liability. Accordingly, even assuming that the trial court improperly excluded this evidence, the plaintiffs cannot demonstrate that the court's rulings were harmful. "It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 506, 706 A.2d 1 (1998). "In the absence of a showing that the evidence would have affected the final result, its exclusion is harmless." Id. Accordingly, we find the plaintiffs' claim on this evidentiary issue to be without merit.

## E

The plaintiffs next claim that the trial court improperly permitted the defendant to ask Jacqueline Wright whether Wolfe ever advised her against the implant surgery or any other procedures employed by the defendant. The plaintiffs argue that this testimony was irrelevant and that it improperly suggested to the jury that the duty to obtain informed consent was shared by persons other than the defendant.[6]

We fail to find that the trial court abused its discretion in permitting this testimony, and the plaintiffs have provided no authority that would lead us to conclude otherwise. We note that the defendant's inquiry of Wolfe consisted of a single question and answer in a trial that occurred over a period of two months. Furthermore, as argued by the defendant, if the trial court improperly

---

[6] Wolfe was Jacqueline Wright's treating physician and employer. He referred her to the defendant for the joint surgery at issue in this case.

permitted this inquiry, the court remedied any possible confusion it caused by clearly instructing the jury that the duty to obtain informed consent rested solely with the defendant. The court instructed the jury that "[a]s to informed consent . . . [i]t is a duty of every doctor or surgeon to give a patient all the information that is material to the decision that the patient will make in undergoing the proposed procedure. Under this duty the plaintiff must prove that *Dr. Hutt* did not disclose all known material risks peculiar to that proposed procedure . . . ." (Emphasis added.) "A jury is presumed to follow the trial court's instructions. *State* v. *Richardson*, 214 Conn. 752, 757, 574 A.2d 182 (1990)." *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 707, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). Accordingly, we find no merit to the plaintiffs' claim.

## F

The plaintiffs next claim that the trial court improperly permitted defense counsel to ask Jacqueline Wright about the substance of her discussions with Cavanagh that took place prior to her consenting to undergo a surgical procedure subsequent to those performed by the defendant. The plaintiffs claim that this testimony related to whether Cavanagh received the plaintiff's informed consent and was, therefore, irrelevant and served to distract the jury from the issues in the case. The defendant contends that the questions were proper because the plaintiff testified at length on direct examination regarding the surgical procedures performed by Cavanagh and the substance of Jacqueline Wright and Cavanagh's conversations with respect to that surgery. According to the defendant, the plaintiffs claimed as damages the costs associated with Cavanagh's treatment, and the questions asked were relevant to disprove the plaintiffs' contention that the medical treatment

rendered by Cavanagh was causally related to Jacqueline Wright's treatment with the defendant.

"The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court." *State* v. *Carmon*, 47 Conn. App. 813, 817, 709 A.2d 7, cert. denied, 244 Conn. 918, 714 A.2d 7 (1998). "Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 219, 690 A.2d 1370 (1997).

After a review of the record and transcripts in this case, we conclude that the trial court did not abuse its discretion in its rulings with regard to the scope of the defendant's cross-examination of Jacqueline Wright. She testified on direct examination regarding her course of treatment with Cavanagh, and about the pain and suffering she endured as a result of that treatment. On cross-examination, the defendant asked her whether Cavanagh informed her that the surgical procedure and treatment plan he recommended were controversial. To the extent the plaintiff's testimony on direct examination related to a claim that her treatment with Cavanagh was necessary to remedy injuries resulting from the Vitek implants and to a claim of damages therefor, the defendant's questions regarding her discussions with Cavanagh appear to be relevant. "A question is within the scope of the direct examination if it is intended to 'rebut, impeach, modify or *explain* any of the [witness'] direct testimony . . . .' *State* v. *Zdanis*, 173 Conn. 189, 196, 377 A.2d 275 (1977)." (Emphasis added.) *State* v. *Morales*, 45 Conn. App. 116, 126, 694 A.2d 1356 (1997), appeal and cross appeal dismissed, 246 Conn. 249, 714 A.2d 677 (1998). Accordingly, we find no merit in the plaintiffs' claim.

## G

The plaintiffs' final argument consists of a generalized contention that the trial court improperly prevented them from asking several medical witnesses questions on issues to which the defendant had "opened the door." The plaintiffs refer to six questions asked of three medical witnesses. We decline to review these claims because the plaintiffs have failed to brief them properly.

The plaintiffs do not specify the grounds for their claims of evidentiary error, nor do they offer any analysis or legal authority to support their claims. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Burke* v. *Avitabile*, 32 Conn. App. 765, 772, 630 A.2d 624, cert. denied, 228 Conn. 908, 634 A.2d 297 (1993). Accordingly, we decline to review these claims.

The judgment is affirmed.

In this opinion the other judges concurred.