[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Devon Smith, filed a petition for a writ of habeas corpus pursuant to General Statutes § 52-466, seeking to correct certain conditions of his confinement which he alleges violate his First Amendment religious rights. In response, the respondent filed a motion to dismiss the petition on the grounds of lack of subject matter jurisdiction and mootness. For the following reasons the respondent's motion to dismiss is granted.[1]
 I.
The petitioner, Devon Smith, is an inmate at Northern Correctional Institution. He has been incarcerated there since some time after he was convicted by a jury in relation to his December 13, 1993, arrest. The petitioner filed his petition for a writ of habeas corpus on March 19, 1998.[2] In his petition for a writ of habeas corpus, the petitioner claims that his "constitutional rights are being infringed upon because I refused PPD[3] test." PETITION FOR WRIT OF HABEAS CORPUS, March 19, 1998, p. 3 (hereinafter, PETITION).
The respondent, on October 30, 1998, filed a motion to dismiss[4] Devon Smith's petition for a writ of habeas corpus.MOTION TO DISMISS, October 30, 1998; MEMORANDUM IN SUPPORT OFMOTION TO DISMISS, October 30, 1998 (hereinafter, MEM. MOT.DISMISS). In its motion the respondent argues that Smith's CT Page 4200 petition should be dismissed on grounds of lack of jurisdiction and mootness. Practice Book § 23-29(1), (4). On November 30, 1998, the petitioner filed his objection to the respondent's motion to dismiss. PRO SE PETITIONER'S RESPONSE TO RESPONDENTSMOTION TO DISMISS, November 30, 1998 (hereinafter, PET'S RESP.MOT. DIS.). In his response the petitioner claims that his rights are protected by the constitution, "as Rastafarians[5] don't have to submit to such test. . . ." PET'S RESP. MOT. DIS., p. 2.
The petitioner claims that he received prison disciplinary report (D.R.) tickets and sanctions for failing to submit to the annual PPD test; MEM. MOT. DISMISS, p. 1; in violation of his "religious belief[s]."[6] PETITION, p. 4. As a direct result of these" "guilty findings," he claims that he had to forfeit his radio, commissary and other non-enumerated privileges. MEM. MOT.DISMISS, p. 4. Although the petitioner concedes that he did eventually submit to the PPD test; MEM. MOT. DISMISS, p. 6; he continues to seek relief because the test is given annually and he wants to avoid being "indefinitely" denied his mail, phone calls, radio, commissary, good time and advancement in the prison's phase program.[7] PET'S RESP. MOT. DIS., p. 1.
 II.
"`In a writ of habeas corpus alleging illegal confinement the application must set forth specific grounds for the issuance of the writ including the basis for the claim of illegal confinement.' Macri V. Hayes, 189 Conn. 566, 568, 456 A.2d 1186
(1983). The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. McPheters v. Pollard, 146 Conn. 509,510, 152 A.2d 632 (1959). The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint.' (Internal quotation marks omitted.) Wright v. Hutt, 50 Conn. App. 439, 449, 718 A.2d 969
(1998)." Jenkins v. Commissioner of Correction,52 Conn. App. 360, ___ A.2d ___ (1999); accord Santiago v.Commissioner, supra, 39 Conn. App. 674, 678, 667 A.2d 304 (1995). Thus, this court will limit its consideration of the petitioner's claims to those raised in his petition and will not look outside of the petition to consider issues raised in his Pro Se Motion for SummaryJudgment or his Pro Se Petitioner's Response to RespondentsMotion to Dismiss.[8] The only claim raised in Smith's petition is that the respondent is violating his First Amendment right to CT Page 4201 practice his religion by requiring him to submit to the annual tuberculosis PPD test.
The respondent argues that the petitioner's complaint concerns conditions of confinement and does not concern the legality of his incarceration, any deprivation of liberty or furnish a ground for his release from custody. MOTION TO DISMISS;MEM. MOT. DISMISS, p. 2-3.[9] Thus, the respondent claims, this court lacks the jurisdiction to hear Devon Smith's petition. Furthermore, because the petitioner did eventually submit to the PPD test, the respondent claims that Smith's petition is moot.MOT. SUM. JUDG., pp. 3-4; MEM. MOT. DISMISS, p. 6.
"Jurisdiction over the subject matter is the court's power to hear and decide cases of the general class to which the proceedings at issue belong. A court has subject matter jurisdiction if it has the authority to hear a particular type of legal controversy. This jurisdiction relates to the court's competency to exercise power. Unlike jurisdiction over the person, subject matter jurisdiction cannot be created through consent or waiver. Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented. The court must fully resolve it before proceeding with the case. Whenever a court finds that it has no jurisdiction, it must dismiss the case, without regard to previous rulings." (Internal quotations and citations omitted.)Vincenzo v. Warden, 26 Conn. App. 132, 134-135, 599 A.2d 31
(1991)
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention." Valle v. Commissioner ofCorrection, 244 Conn. 634, 711 A.2d 722 (1998). The writ is "one of the most extraordinary and unique legal remedies in the procedural armory of our law." Vincenzo v. Warden, supra,26 Conn. App. 136. "Historically, the purpose of the writ has been to provide a vehicle for judicial inquiry into whether a petitioner's imprisonment is illegal." (Internal citations omitted.) Valle v. Commissioner of Correction, supra,244 Conn. 634. "When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . [A]ny remedy must be commensurate with the scope of the constitutional violations that have been established." Vincenzo v. Warden supra, 26 Conn. App. 138. "[Q]uestions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus." Sanchez v. Warden, CT Page 4202214 Conn. 23, 570 A.2d 673 (1990)
In Connecticut today, the scope of habeas corpus relief is defined in General Statutes §§ 52-466 and 52-470 which give the habeas court "the authority to hear those petitions that allege illegal confinement or deprivation of liberty." (Emphasis added.) Abed v. Commissioner of Correction, 43 Conn App. 176,179, 682 A.2d 558, cert. denied, 239 Conn. 937, 684 A.2d 707
(1996). However, the scope of habeas has been extended in limited circumstances to encompass challenges that do not involve the release of the petitioner. See Lozada v. Warden, 223 Conn. 834,842, 613 A.2d 818 (1992); accord Sanchez v. Warden, supra,214 Conn. 23. Specifically, in 1982, in Arey v. Warden 187 Conn. 324,445 A.2d 916 (1982); the Connecticut Supreme Court expanded the scope of habeas corpus relief to include challenges based on the Eighth Amendment's protection against cruel and unusual punishment.
"The proper vehicle for attacking the legal sufficiency of a petition for a writ of habeas corpus is a motion to quash. . . . [W]hen the court considers a motion to quash a petition for a writ of habeas corpus, the allegations made in the petition are deemed admitted. . . . [T]he court does not look to facts outside those alleged in the petition." (Internal citations omitted.)Santiago v. Commissioner, supra, 39 Conn. App. 678. A motion to dismiss, which is before the court today, is the functional equivalent to a motion to quash. Practice book § 532; Macriv. Hayes, supra, 189 Conn. 567, n. 2. Limiting the inquiry solely to the facts alleged in the petition, this court must determine whether the petitioner has alleged sufficient facts to confer subject matter jurisdiction on this habeas court.
"Our Supreme Court found that [tllhe writ of habeas corpus, as it is employed in the twentieth century . . . does not focus solely upon a direct attack on the underlying judgment or upon release from confinement but is available as a remedy for issues of fundamental fairness implicating constitutional rights. (Internal citations and quotation marks omitted.) Santiago v.Commissioner, supra, 39 Conn. App. 679. The respondent claims that the petitioner has "failed to state a legally cognizable claim" because "the petitioner cannot and has not alleged that he lost good time as a result of the guilty findings [disciplinary reports and sanctions] and because the fact or length of his confinement has not been adversely affected by the guilty findings." MEM. MOT. DISMISS, pp. 1-2. What the respondent fails CT Page 4203 to address is the petitioner's claim that his religious rights, as protected by the First Amendment, are being violated by his being required to submit to the PPD test or suffer the disciplinary consequences in the alternative. While the petitioner has not alleged a loss of good time in his petition, he has alleged an issue of "fundamental fairness implicating [his First Amendment] constitutional rights." Santiago v.Commissioner, supra, 39 Conn. App. 679.
This issue of whether the remedy of habeas corpus should be made available for prisoners to attack the conditions of their confinement rather than the legality of the confinement remains unsettled in Connecticut. "The essential purpose of habeas as a vehicle to free a person whose confinement is unlawful is a constant thread in Connecticut jurisprudence. As early as 1784, the New Haven County Superior Court issued a writ of habeas corpus to bring before the court a former slave whose confinement had been caused by his former master. Utilizing the writ of habeas corpus, the court determined that the former slave had been manumitted by his military service in the Continental Army, and he was ordered discharged from confinement. 1 Root 92."Miller v. Warden, Superior Court, judicial district of Tolland, at Somers, Docket No. 1566 (Bishop, J., March 27, 1996). More recently our Appellate and Supreme Courts have described the writ as "one of the most extraordinary and unique legal remedies in the procedural armory of our law"; Vincenzo v. Warden, supra,26 Conn. App. 133; "a special and extraordinary legal remedy for illegal detention." Reed v. Reincke, 155 Conn. 591, 594,236 A.2d 909 (1967); see also Vincenzo v. Warden, supra, 26 Conn App. 137;State v. Filigrana, Superior Court, judicial district of Hartford, Docket No. 401270 (Rubinow, J., July 9, 1997) (20 Conn. IU. Rptr. 54); Valle v. Commissioner, supra, 244 Conn. 636.
However, the courts have also acknowledged that the boundaries of the "Great Writ" can be "ephemeral and complex."Vincenzo v. Warden, supra, 26 Conn. App. 133. In Brown v. Allen, Justice Frankfurter of the United States Supreme Court noted that "the writ has potentialities for evil as well as for good. The circumstances and conditions for bringing into action a legal remedy having such potentialities obviously cannot be defined with a particularity appropriate to legal remedies of much more limited scope. To attempt rigid rules would either give spuriously concrete form to wide-ranging purposes or betray the purposes by strangulating rigidities. . . . The fact that we cannot formulate rules that are absolute or of a definiteness CT Page 4204 almost mechanically applicable does not discharge us from the duty of trying to be as accurate and specific as the nature of the subject permits." 344 U.S. 443, 512-513, 73 S.Ct. 397,97 L.Ed.2d 469 (1953). Examples of the complexity discussed by Justice Frankfurter are present in our own Supreme Court law. InSanchez v. Warden, 214 Conn. 23, 570 A.2d 673 (1990), the Supreme Court reviewed a habeas petition which alleged that denying the inmate petitioners' access to radios with sound emitting speakers violated their First Amendment rights. After finding, on the merits, that the respondent warden's policy did not violate the petitioners' First Amendment rights, the court engaged in a lengthy analysis of whether the remedy of habeas corpus should even be available for prisoners to challenge the conditions of their confinement as opposed to the legality of it. In reviewing its historical position on the issue of the writ's scope, the court stated: "It is not self-evident that the standard relief granted in a habeas corpus action, discharge of the prisoner unless the violation of his rights is corrected, is necessarily more efficacious than the relief granted to a successful 1983 plaintiff." Sanchez v. Warden, supra, 214 Conn. 34. However, the court stopped short of answering its own question: "Neither party has briefed the question. Accordingly, we await a more suitable occasion to decide whether the scope of habeas corpus should be broadened to include challenges to conditions of confinement when 1983 may be a viable alternative for presenting the petitioner's claims." Id., 34-35. This dicta was authored in 1990 and since that time the issue has yet to be clearly and fully litigated.
It is the holding of this court that habeas corpus is not the proper forum for petitioners to raise conditions of confinement claims when there are other more appropriate remedies available. [T]he principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness." (Internal quotation marks omitted.) (Emphasis added.)Lozada v. Warden, supra, 223 Conn. 840. "[F]rom the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention. . . . The history of our own jurisprudence is wholly in accord with these principles."Vincenzo v. Warden, supra, 26 Conn. App. 136-137; accord Reed v.Reincke, supra, 155 Conn. 594 ("Habeas corpus provides a special and extraordinary legal remedy for illegal detention.").
This is not to say that the petitioner should have no forum in which to seek redress for any injuries he may have suffered as a result of the conditions of his confinement. In 1996, the CT Page 4205 United States Second Circuit Court of Appeals heard a claim very similar to the one brought before this court by the petitioner.Jolly v. Coughlin, 76 F.3d 468 (2nd Cir. 1996). In Jolly, the plaintiff, a Rastafarian inmate at Attica Correctional Facility, refused to submit to the tuberculosis PPD test because the acceptance of artificial substances into the body is a sin under the tenets of Rastafarianism. As a result of his refusal to take the test, Jolly was placed in medical keeplock. Jolly then moved for a preliminary injunction claiming that the conditions of his confinement violated his rights under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq, and the Eighth Amendment's right to be free from cruel and unusual punishment. The district court found that Jolly was likely to succeed on the merits of his case and that he was entitled to a preliminary injunction. The Second Circuit Court of Appeals upheld the findings of the district court. Although the Religious Freedom Restoration Act of 1993 is no longer in effect; City ofBoerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624
(1997); the petitioner could pursue the same remedy of an injunction or damages under 42 U.S.C. § 1983. In 1996, the United States Second Circuit Court of Appeals also heard the case of Williams v. Greifinger, 97 F.3d 699 (2nd Cir. 1996), shortly after its decision in Jolly. The plaintiff in Williams, an inmate at Sing Sing Correctional Facility, brought suit under the protection of 42 U.S.C. § 1983, alleging cruel and unusual punishment resulting from his refusal to submit to the PPD test. The Second Circuit Court of Appeals overturned the district court's grant of summary judgment in favor of the defendant and remanded the case for proceedings consistent with their findings. If this petitioner has indeed suffered injuries he has other options, besides for habeas corpus, available to him. This court makes no findings with respect to the likely or unlikely success on the merits of the petitioner's claim. This court concludes that habeas corpus is not the proper vehicle for addressing the petitioner's claim.
Thus, the respondent's Motion to Dismiss is hereby granted on the grounds that the petitioner has failed to allege a claim I cognizable within the subject matter jurisdiction of this habeas court.
Zarella J.