# THOMAS E. BARTOMELI, SR. *v.* RAYMOND A. BARTOMELI, JR., ET AL.
## (AC 20083)

Landau, Spear and Dranginis, Js.

Argued March 20—officially released September 4, 2001

*Brendan T. Flynn*, with whom was *Mark A. Rosenblum*, for the appellants (defendants).

*Ralph C. Crozier*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendants, Raymond A. Bartomeli, Jr. (Raymond), and the Bartomeli Company, Inc. (company), appeal from the judgment rendered in favor of the plaintiff, Thomas E. Bartomeli, Sr. (Thomas), after a trial to the court. On appeal, the defendants claim that the court improperly (1) concluded that the company was liable in contract, (2) concluded that Raymond had breached a partnership contract and (3) awarded damages. We reverse in part and affirm in part the judgment of the trial court.

The following facts and procedural history are relevant to the issues raised on appeal. Thomas and Raymond are brothers. In 1981, they each worked for different construction companies as equipment operators. Thomas, Raymond and their father decided to start a business delivering cordwood. Later, the business developed into a small construction company, and Thomas decided to leave his employment to join Raymond full-time at the company. In the early 1980s, the brothers each contributed individual assets to the company and worked together to acquire equipment.[1] Thomas considered himself a partner in the company; Raymond often referred to Thomas as his partner. It was the practice of the company to garage the equipment at Thomas' house. In 1983, the company was incorporated, but Thomas never held any shares in the company. In the late 1980s, the company experienced severe financial difficulties. The secretary of the state stripped the company of its corporate status for failure to file annual

---

[1] Thomas and Raymond signed notes jointly to acquire equipment for the company.

reports. Raymond, however, was interested in filing for bankruptcy and managed to have the company's corporate status reinstated.

On several occasions, Thomas' careless operation of equipment resulted in loss or damage to the company. Raymond became dissatisfied with Thomas' work performance and, on January 17, 1991, Thomas was removed as secretary of the corporation. On April 19, 1991, Thomas went to the company office and demanded a blank check from the secretary. Raymond found out about Thomas' demand and fired him. On April 20, 1991, Thomas demanded from Raymond either 50 percent of the company or certain equipment owned by the company. On April 22, 1991, Thomas was removed as vice president of the company. Thomas and Raymond could not reach an agreement as to compensation for Thomas, and thereafter Thomas brought the underlying action.

Thomas' second amended complaint contained nine counts and alleged, inter alia, that Raymond had breached his contractual promise to make Thomas an equal partner in the company.[2] The defendants filed a two count counterclaim, alleging that the plaintiff (1) converted company equipment, and (2) accord and satisfaction. The case was tried to the court over thirteen days. The court found that Thomas and Raymond were de facto partners, and that Raymond was in breach of their contract. On the basis of its finding, the court

---

[2] The first count alleged fraud and misrepresentation. The second alleged unjust enrichment. The third count alleged conversion. The fourth count sought an accounting of the defendants' business assets. The fifth count sought a constructive trust and division of assets. The sixth count alleged breach of contract. The seventh count alleged that the plaintiff was entitled to compensation on the basis of quantum meruit. The eighth count sought a partition of the defendants' assets and a dissolution of the company. The ninth count sought an injunction preventing the defendants from disposing of any of the company's assets. During trial, Thomas withdrew the fourth and ninth counts.

concluded that Thomas was entitled to a 50 percent share of the company's nontangible assets ($250,767) and damages equal to the value of a number of pieces of company equipment ($94,000) for a total damages award of $344,767. The court also concluded that Thomas was liable to the defendants for $8500 in damages resulting from his conversion of company equipment.[3] This appeal followed.

## I

The defendants first claim that the court improperly concluded that the company was liable for breach of contract. More specifically, the defendants argue that because the plaintiff did not allege that the company was in breach of contract, the court's conclusion was improper. We agree.

The following additional facts are relevant for our resolution of the defendants' claim. In the sixth count of the plaintiff's complaint, the plaintiff incorporated the first twenty-three paragraphs of his first count and then added a paragraph alleging: "The 'Defendant Bartomeli' breached his contract, which contract was that the plaintiff and 'Defendant Bartomeli' would share equally as partners and shareholders in the [company] and the plaintiff has been harmed by the said defendant's breach of said contract." In paragraph two of the sixth count, the plaintiff defined "Defendant Bartomeli" as Raymond. There is no allegation in the plaintiff's breach of contract claim that the company was in breach of the contract.

It is helpful to first set forth our standard of review. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by

---

[3] The court found that because the plaintiff converted company equipment, the company was unable to complete a contract valued at $8500.

the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 199, 756 A.2d 309 (2000).

"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citation omitted; internal quotation marks omitted.) *Moore* v. *Sergi*, 38 Conn. App. 829, 841, 664 A.2d 795 (1995). "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 449, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). "A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery." (Internal quotation marks omitted.) *Moore* v. *Sergi*, supra, 841–42.

Here, the plaintiff did not allege that the company breached a contract with him. Because the plaintiff may rely only on what he has alleged; *Wright* v. *Hutt*, supra, 50 Conn. App. 449; he may not recover against the

company for breach of contract. Therefore, we conclude that the court improperly held the company liable for breach of contract.

## II

The defendants next claim that the court improperly concluded that Raymond was liable to the plaintiff for breach of their partnership contract.[4] More specifically, the defendants argue that because the court found that the company was a corporation, it was legally inconsistent for the court to have also found that between Raymond and Thomas, there was a contract for partnership in the company. We disagree.

The following facts are relevant to our conclusion. In its memorandum of decision, the court found that the company was a corporation. Thomas was not a shareholder in the company. The court found also that Thomas and Raymond both contributed personal assets in the form of equipment to the company and that both guaranteed notes for the purchase of company equipment. In public, Raymond introduced Thomas as his partner. When Raymond "fired" Thomas, the parties attempted to agree on a division of the company assets, indicating that there was more going on than the simple termination of an employer-employee relationship. The court found that Raymond and Thomas were de facto partners in the company, and it concluded that Raymond had breached the partnership contract by denying Thomas his interest in the company.

Although we agree with the defendants' assertion that the company could not have been both a corporation and a partnership; *Karanian* v. *Maulucci*, 185 Conn. 320, 323–24, 440 A.2d 959 (1981); we disagree

---

[4] In their brief, the defendants claim that neither Raymond nor the company is liable for breach of contract. Because we already have concluded that the court improperly found the company liable for breach of contract, we analyze the claim only with respect to Raymond.

with their assertion that because the company was not a partnership, there could not have been a partnership *contract.*

"[T]o form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1 (c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts (1957) §§ 18, 22; see also *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 444, 6 A.2d 357 (1939); *Clark* v. *Diefendorf*, 109 Conn. 507, 510, 147 A. 33 (1929). . . . The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act." (Citation omitted; internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 798, 720 A.2d 242 (1998). "[The] agreement must be definite and certain as to its terms and requirements. . . . [It] requires a clear and definite promise. . . . A court may, however, enforce an agreement if the missing terms can be ascertained, either from the express terms or by fair implication. . . . Thus, an agreement, previously unenforceable because of its indefiniteness, may become binding if the promise on one side of the agreement is made definite by its complete or partial performance." (Citations omitted; internal quotation marks omitted.) *Geary* v. *Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 627–28, 760 A.2d 969 (2000). General Statutes § 34-301 (5), defines partnership as "an association of two or more persons to carry on as co-owners a business for profit . . . ."

On the basis of the court's findings that both Thomas and Raymond worked for the company, both contributed personal assets in the form of equipment to the company, both guaranteed notes for the purchase of company equipment, and that Raymond introduced Thomas as his partner and denied Thomas his interest in the company, we conclude that the court properly

found that Raymond and Thomas were de facto partners, and that Raymond had breached the contract of partnership.

### III

The defendants claim that the court improperly awarded damages. Specifically, they claim that the court improperly (1) calculated damages and (2) awarded damages for good will without evidence to support the award. We agree with the first of the defendants' claims and disagree with the second.

The following additional facts are necessary for our resolution of the defendants' claims. The court found that Thomas was entitled to $94,000 in damages for the company's tangible assets, a 50 percent interest in the company's value as an ongoing business and a 50 percent interest of the company's good will. In computing its award for the company's value as an ongoing business, the court averaged the company's net worth of assets over liabilities as shown in its balance sheets from March 31, 1991, and June 30, 1991, for an award of $200,767. The court determined that Thomas' interest in the company's good will was $50,000.[5]

"The trial court has broad discretion in determining damages, and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted;

---

[5] In its memorandum of decision, the court did not indicate how it calculated its award for good will.

internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 609, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

## A

The defendants claim that after awarding Thomas $94,000 for the tangible assets of the company, the court then improperly included those assets in its calculation of the company's value as on ongoing business. We agree.

It is clear from the court's memorandum of decision that it awarded Thomas $94,000 in damages for the value of tangible company assets, and it intended to award him 50 percent of the company's value as an ongoing business. The balance sheets used by the court to compute the company's value as an ongoing business do not, however, reflect the fact that the court's award of damages for tangible assets reduces the value of the company as an ongoing business by $94,000. Therefore, the court's calculation of the award of damages for the company as an ongoing business is clearly erroneous.[6]

## B

The defendants next claim that the court improperly awarded damages for the value of the company's good will without evidence to support such an award. We decline to review the defendants' claim.

Although the record is replete with evidence as to the value of the company, the court, in its memorandum

---

[6] We reiterate here that we have concluded that the company is not liable to Thomas for breach of contract. The court, in its memorandum of decision, however, found that the defendants were jointly and severably liable to Thomas for breach of contract. Accordingly, we conclude that Raymond, as the only defendant in breach of the contract of partnership, is liable personally for the entire amount of the court's damages award.

of decision, did not explain how it calculated the value of the company's good will. The defendants did not seek an articulation of the court's ruling.

Under those circumstances, we are left to speculate as to the basis for the court's award of damages for good will. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. Practice Book § 61-10; *Lombardi* v. *Lombardi*, 55 Conn. App. 117, 118, 737 A.2d 988 (1999), cert. denied, 252 Conn. 943, 747 A.2d 520 (2000). Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . [I]n the absence of a motion for articulation, [we] assume that the trial court acted properly." (Citations omitted; internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, 61 Conn. App. 162, 163–64, 763 A.2d 669 (2000). Here, because there is no articulation of the basis for the court's ruling, we assume that the trial court acted properly. We therefore decline to review the defendants' claim.

The judgment is reversed as to the finding that the company was in breach of contract and as to the calculation of damages relative to the defendant company as an ongoing business and the case is remanded with direction to render judgment for the defendant company on the plaintiff's claim for breach of contract and for a recalculation of the award of damages consistent with this opinion.

In this opinion the other judges concurred.